# Exhibit 3

## Trust Distribution Procedures

(The Trust Distribution Procedures are Exhibit F to the Plan)

# DURO DYNE ASBESTOS PERSONAL INJURY TRUST DISTRIBUTION PROCEDURES

**DURO DYNE ASBESTOS PERSONAL INJURY TRUST DISTRIBUTION PROCEDURES**

**TABLE OF CONTENTS**


Section 1. Introduction ..... 1

1.1 Purpose ..... 1

1.2 Interpretation ..... 1

Section 2. Overview ..... 2

2.1 Asbestos Trust Goals ..... 2

2.2 Claims Liquidation Procedures ..... 3

2.3 Establishment and Application of the Payment Percentage ..... 4

2.4 Asbestos Trust's Determination of the Maximum Annual Payment ..... 5

2.5 Claims Payment Ratio ..... 7

2.6 Indirect Trust Claims ..... 10

Section 3. TDP Administration ..... 10

3.1 Trust Advisory Committee and Future Claimants' Representative ..... 10

3.2 Consent and Consultation Procedures ..... 10

Section 4. Payment Percentage; Periodic Estimates ..... 11

4.1 Uncertainty of Debtors' Personal Injury Asbestos Liabilities ..... 11

4.2 Computation of Payment Percentage ..... 11

4.3 Applicability of the Payment Percentage ..... 12

Section 5. Resolution of Asbestos Claims ..... 15

5.1 Ordering, Processing and Payment of Asbestos Claims ..... 15

5.1(a) Ordering of Claims ..... 15

5.1(a)(1) Establishment of the FIFO Processing Queue ..... 15

5.1(a)(2) Effect of Statutes of Limitation and Repose ..... 16

5.1(b) Payment of Claims ..... 16

5.2 Resolution of Pre-Petition Liquidated Claims ........ 18

5.2(a) Processing and Payment ........ 18

5.2(b) Marshalling of Security ........ 19

5.3 Resolution of Unliquidated Asbestos Claims ........ 19

5.3(a) Expedited Review Process ........ 20

5.3(a)(1) In General ........ 20

5.3(a)(2) Claims Processing Under Expedited Review ........ 21

5.3(a)(3) Disease Levels, Scheduled Values and Medical/Exposure Criteria ........ 21

5.4 Secondary Exposure Claims ........ 24

5.5 Indirect Trust Claims ........ 24

5.6 Evidentiary Requirements ........ 27

5.6(a) Medical Evidence ........ 27

5.6(a)(1) In General ........ 27

5.6(a)(1)(A) Disease Level I ........ 27

5.6(a)(1)(B) Disease Levels II-V ........ 28

5.6(a)(2) Credibility of Medical Evidence ........ 28

5.6(a)(3) Reliance by Asbestos Trust on Finding of another Asbestos Trust ........ 29

5.6(b) Exposure Evidence ........ 29

5.6(b)(1) In General ........ 29

5.6(b)(2) Significant Occupational Exposure ........ 30

5.6(b)(3) Debtor Exposure ........ 30

5.6(b)(3)(A) Qualifying Occupations ........ 31

5.6(b)(3)(B) Standard of Exposure ........ 31

5.6(b)(3)(C) Non-Qualifying Occupations ........ 32

5.7 Claims Audit Program ........ 32

5.8 Arbitration ........ 33

5.8(a) Establishment of ADR Procedures ........ 33

5.8(b) Limitations on and Payment of Arbitration Awards ... 34

5.9 Litigation ... 34

5.10 Claims Covered by Policies Issued by Non-Settling Asbestos Insurers ... 34

5.11 Claims against Non-Settling Asbestos Insurers ... 35

5.12 Second Disease Claims ... 35

Section 6. Claims Materials ... 36

6.1 Claims Materials ... 36

6.2 Content of Claims Materials ... 36

6.3 Deferral of Claims ... 37

6.4 Filing Requirements and Fees ... 38

6.5 Confidentiality of Claimants' Submissions ... 38

Section 7. General Guidelines for Liquidating and Paying Claims ... 40

7.1 Showing Required ... 40

7.2 Costs Considered ... 40

7.3 Discretion to Vary the Order and Amounts of Payments in Event of Limited Liquidity ... 40

7.4 Punitive Damages ... 41

7.5 Sequencing Adjustment ... 42

7.5(a) In General ... 42

7.5(b) Unliquidated Asbestos Claims ... 42

7.5(c) Liquidated Pre-Petition Claims ... 43

7.6 Suits in the Tort System ... 43

7.7 Payment of Judgments for Money Damages ... 44

7.8 Releases ... 44

7.9 Third-Party Services ... 45

Section 8. Miscellaneous ... 45

8.1 Amendments ... 45

8.2 Severability ........................................................................................................ 45

8.3 Governing Law ..................................................................................................... 46

# DURO DYNE ASBESTOS PERSONAL INJURY TRUST DISTRIBUTION PROCEDURES

The Duro Dyne Asbestos Personal Injury Trust Distribution Procedures (the "**TDP**") contained herein provide for resolving all Channeled Asbestos Claims ("**Asbestos Claims**") as defined in the Third Amended Prenegotiated Plan of Reorganization for Duro Dyne National Corp., et al., under Chapter 11 of the Bankruptcy Code, as Modified, dated June 6, 2019 (as it may be further amended or modified, the "**Plan**"),[1] as provided in and required by the Plan and the Duro Dyne Asbestos Personal Injury Trust Agreement (the "**Trust Agreement**"). The Plan and the Trust Agreement establish the Duro Dyne Asbestos Personal Injury Trust (the "**Asbestos Trust**"). The Asbestos Trustee of the Asbestos Trust (the "**Trustee**") shall implement and administer this TDP in accordance with the Trust Agreement.

## SECTION 1.

## INTRODUCTION

**1.1 Purpose.** This TDP has been adopted pursuant to the Trust Agreement. It is designed to provide fair, equitable and substantially similar treatment for all Asbestos Claims that may presently exist or may arise in the future.

**1.2 Interpretation.** Except as may otherwise be provided below, nothing in this TDP shall be deemed to create a substantive right for any claimant. The rights and benefits provided herein to holders of Asbestos Claims shall vest in such holders as of the Effective Date.

---

**1** Capitalized terms used herein and not otherwise defined shall have the meanings assigned to them in the Plan and the Trust Agreement**.**

## SECTION 2.

## OVERVIEW

### 2.1 Asbestos Trust Goals.

The goal of the Asbestos Trust is to treat all claimants equitably. This TDP furthers that goal by setting forth procedures for processing and paying the Debtors' several share of the unpaid portion of the liquidated value of Asbestos Claims generally on an impartial, first-in-first-out ("**FIFO**") basis, with the intention of paying all claimants over time as equivalent a share as possible of the value of their claims based on historical values for substantially similar claims in the tort system.[2] To this end, the TDP establishes a schedule of five asbestos-related diseases ("**Disease Levels**") which have presumptive medical and exposure requirements ("**Medical/Exposure Criteria**") and specific liquidated values ("**Scheduled Values**"). The Disease Levels, Medical/Exposure Criteria, and Scheduled Values, which are set forth in Section 5.3(a)(3) below, have all been selected and derived with the intention of achieving a fair allocation of the Asbestos Trust funds as among claimants suffering from these different disease processes in light of the best available information considering the settlement history of the Debtors and the rights claimants would have in the tort system absent the bankruptcy. Except as set forth in Section 5.12 hereof, a claimant may not assert more than one Asbestos Claim hereunder.

Historically, the Debtors resolved only a few dozen asbestos cases annually on a national basis. The vast majority of those cases were based on claims by sheet metal workers who worked directly with the Debtors' asbestos-containing specialty products and who were installing such

[2] As used in this TDP, the phrase "in the tort system" shall **not** include claims asserted against a trust established for the benefit of asbestos personal injury claimants pursuant to section 524(g) and/or section 105 of the Bankruptcy Code or any other applicable law.

products personally. Because of the very limited resources of the Asbestos Trust, it is constrained with respect to the claimants it can compensate. As a consequence, this TDP provides for the payment to both present and future claimants by the Asbestos Trust of Asbestos Claims based only on certain diseases and only with respect to those claims that provide certain evidence of exposure patterns. To that end, the Asbestos Trust may make reasonable inquiries of claimants and/or co-workers as to the nature and extent of their exposure to the Debtors' asbestos-containing products.

**2.2 Claims Liquidation Procedures.** Asbestos Claims shall be processed based on their place in the FIFO Processing Queue to be established pursuant to Section 5.1(a)(1) below. The Asbestos Trust shall take all reasonable steps to resolve Asbestos Claims as efficiently and expeditiously as possible at each stage of claims processing and arbitration, which steps may include, in the Asbestos Trust's sole discretion, conducting settlement discussions with claimants' representatives with respect to more than one claim at a time, provided that the claimants' respective positions in the FIFO Processing Queue are maintained and each claim is evaluated pursuant to the valuation factors set forth herein. The Asbestos Trust shall also make every effort to resolve each year at least that number of Asbestos Claims required to exhaust the Maximum Annual Payment as that term is defined below.

The Asbestos Trust shall liquidate all Asbestos Claims under the Expedited Review Process described in Section 5.3(a) below. Based upon the Debtors' claims settlement history in light of applicable tort law, and current projections of present and future unliquidated claims, the Scheduled Values for all Disease Levels have been established as set forth in Section 5.3(a)(3).

All unresolved disputes over a claimant's medical condition or exposure history shall be subject to binding or non-binding arbitration as set forth in Section 5.8 below, at the election of the claimant, under the ADR Procedures that are to be established by the Asbestos Trust. Asbestos

Claims that are the subject of a dispute with the Asbestos Trust that cannot be resolved by non-binding arbitration may enter the tort system as provided in Sections 5.9 and 7.6 below. However, if and when a claimant obtains a judgment in the tort system, the judgment shall be payable as provided in Section 7.7 below (subject to the Payment Percentage, as defined in Section 4.1 below, and the Maximum Annual Payment, Maximum Available Payment and Claims Payment Ratio provisions set forth herein).

**2.3 Establishment and Application of the Payment Percentage.** The Payment Percentage for Asbestos Claims shall be established by the Trustee with the consent of the Trust Advisory Committee ("**TAC**") and the Legal Representative ("**FCR**"). After the liquidated value of an Asbestos Claim as defined in Section 5.3(a)(3) below is determined pursuant to the procedures set forth herein for Expedited Review, arbitration, or litigation in the tort system, the claimant shall ultimately receive a pro rata share of that value based on a Payment Percentage described in Section 4.2 below. The Payment Percentage shall also apply to all Pre-Petition Liquidated Claims as provided in Section 5.2 below and to all sequencing adjustments paid pursuant to Section 7.5 below.

The Payment Percentage may be adjusted upwards or downwards from time to time by the Asbestos Trust with the consent of the TAC and the FCR to reflect then-current estimates of the Asbestos Trust's assets and its liabilities, as well as the then-estimated value of then-pending and future claims. If the Payment Percentage is increased over time, claimants whose claims were liquidated and paid in prior periods under the TDP shall receive additional payments only as provided in Section 4.3 below. Because there is uncertainty in the prediction of both the number and severity of future Asbestos Claims, and the amount of the Asbestos Trust's assets, no guarantee can be made of any Payment Percentage of an Asbestos Claim's liquidated value.

The Trustee shall provide notice within ten (10) days to the United States Trustee for Region 3 or his or her designee (the "**U.S. Trustee**") of the establishment of the Payment Percentage and of any change in the Payment Percentage.

**2.4 Asbestos Trust's Determination of the Maximum Annual Payment.** After calculating the Payment Percentage, the Asbestos Trust shall model the cash flow, principal and income year-by-year to be paid over its entire life to ensure that all present and future holders of Asbestos Claims are compensated at the Payment Percentage. In each year, based upon the model of cash flow, the Asbestos Trust shall be empowered to pay out the portion of its funds payable for that year according to the model (the "**Maximum Annual Payment**"). The Asbestos Trust's distributions to all claimants for that year shall not exceed the Maximum Annual Payment. The Payment Percentage and the Maximum Annual Payment figures are based on projections over the lifetime of the Asbestos Trust. If such long-term projections are revised, the Payment Percentage may be adjusted accordingly, which would result in a new model of the Asbestos Trust's anticipated cash flow and a new calculation of the Maximum Annual Payment figures.

However, year-to-year variations in the Asbestos Trust's flow of claims or the value of its assets, including earnings thereon, will not mean necessarily that the long-term projections are inaccurate; they may simply reflect normal variations, both up and down, from the smooth curve created by the Asbestos Trust's long-term projections. If, in a given year, however, asset values, including earnings thereon, are below projections, the Asbestos Trust may need to distribute less in that year than would otherwise be permitted based on the original Maximum Annual Payment derived from long-term projections. Accordingly, the original Maximum Annual Payment for a given year may be temporarily decreased if the present value of the assets of the Asbestos Trust as measured on a specified date during the year is less than the present value of the assets of the

Asbestos Trust projected for that date by the cash flow model described in the foregoing paragraph. The Asbestos Trust shall make such a comparison whenever the Trustee becomes aware of any information that suggests that such a comparison should be made. If the Asbestos Trust determines that as of the date in question, the present value of the Asbestos Trust's assets is less than the projected present value of its assets for such date, then it will remodel the cash flow year-by-year to be paid over the life of the Asbestos Trust based upon the reduced value of the total assets as so calculated and identify the reduced portion of its funds to be paid for that year, which will become the Temporary Maximum Annual Payment (additional reductions in the Maximum Annual Payment can occur during the course of that year based upon subsequent calculations). If in any year the Maximum Annual Payment was temporarily reduced as a result of an earlier calculation and, based upon a later calculation, the difference between the projected present value of the Asbestos Trust's assets and the actual present value of its assets has decreased, the Temporary Maximum Annual Payment shall be increased to reflect the decrease in the differential. In no event, however, shall the Temporary Maximum Annual Payment exceed the original Maximum Annual Payment. As a further safeguard, the Asbestos Trust's distribution to all claimants for the first nine months of a year shall not exceed 85% of the Maximum Annual Payment determined for that year. If on December 31 of a given year, the original Maximum Annual Payment for such year is not in effect, the original Maximum Annual Payment for the following year shall be reduced proportionately.

In distributing the Maximum Annual Payment, the Asbestos Trust shall first allocate the amount in question to outstanding Pre-Petition Liquidated Claims (as defined in Section 5.2(a) below). The remaining portion of the Maximum Annual Payment (the "**Maximum Available Payment**") shall then be allocated and used to satisfy all other previously liquidated Asbestos

Claims subject to the Claims Payment Ratio set forth in Section 2.5 below; provided, however, that if the Maximum Annual Payment is reduced during a year pursuant to the provisions above, the Maximum Available Payment shall be adjusted accordingly.

**2.5 Claims Payment Ratio.** Based upon the Debtors' claims settlement history and analysis of present and future claims, a Claims Payment Ratio has been determined which, as of the Effective Date, has been set at 90% for Category A claims, which consist of Asbestos Claims involving mesothelioma (Disease Level V) and at 10% for Category B claims, which are Asbestos Claims involving all other diseases (Disease Levels I-IV). In each year, after the determination of the Maximum Available Payment described in Section 2.4 above, 90% of that amount shall be available to pay Category A claims and 10% shall be available to pay Category B claims that have been liquidated since the Petition Date; provided, however, that if the Maximum Annual Payment is reduced during the year pursuant to Section 2.4 above, the amounts available to pay Category A and Category B claims shall be recalculated based on the adjusted Maximum Available Payment. In the event there are insufficient funds in any year to pay the liquidated claims within either or both of the Categories, the available funds allocated to the particular Category shall be paid to the maximum extent to claimants in that Category based on their place in the FIFO Payment Queue described in Section 5.1(b) below. Claims for which there are insufficient funds allocated to the relevant Category shall be carried over to the next year where they shall be placed at the head of the FIFO Payment Queue. If there is a decrease in the Payment Percentage prior to the payment of such claims, such claims shall nevertheless be entitled to be paid at the Payment Percentage that they would have been entitled to receive but for the application of the Claims Payment Ratio. If, at the end of any calendar year during the first three years the Asbestos Trust is accepting claims, there are excess funds in either or both Categories, because there is an insufficient amount of

liquidated claims to exhaust the respective Maximum Available Payment amount for that Category, then the excess funds for either or both Categories shall be rolled over and remain dedicated to the respective Category to which they were originally allocated.

Notwithstanding any other provision herein, if, at the end of any calendar year following the third anniversary of the date the Asbestos Trust began accepting claims, there are excess funds available in either Category A or Category B and insufficient funds in the other Category to pay such Category's claims, then the Trustee may transfer up to a specified amount of excess funds (the "Permitted Transfer Amount" as defined below) to the Category with the shortfall; provided, however that the Trustee shall never transfer more than the amount of the receiving Category's shortfall. The "**Permitted Transfer Amount**" shall be determined as follows: (a) the Trustee shall first determine the cumulative amount allocated to the Category with excess funds based on the Claims Payment Ratio since the date the Asbestos Trust last calculated its Payment Percentage; (b) the Trustee shall then determine the cumulative amount that the Asbestos Trust estimated would be paid to the Category with excess funds since the date the Asbestos Trust last calculated its Payment Percentage; (c) the Trustee shall then subtract the amount determined in (b) from the amount determined in (a), and the difference between the two shall be referred to as the "**Permitted Transfer Amount**." The Trustee shall provide the TAC~~, U.S. Trustee~~ and the FCR with the Permitted Transfer Amount calculation thirty (30) days prior to making a transfer. The Trustee shall provide notice within ten (10) days to the U.S. Trustee of the occurrence of any transfer. If, at the end of any calendar year following the third anniversary of the date the Asbestos Trust began accepting claims, there are excess funds in either or both Categories because there is an insufficient amount of liquidated claims to exhaust the respective Maximum Available Payment amount for that Category, or, in a year where there was a transfer from one Category to the other, if the amount transferred was less than the amount

of excess funds, then the excess funds for the Category or Categories with excess funds shall be rolled over and remain dedicated to the respective Category to which they were originally allocated.

During the first nine months of a given year, the Asbestos Trust's payments to claimants in a Category shall not exceed the amount of any excess funds that were rolled over for such Category from the prior year plus 85% of the amount that would otherwise be available for payment to claimants in such Category.

In considering whether to make any amendments to the Claims Payment Ratio and/or its rollover provisions, the Trustee shall consider the reasons for which the Claims Payment Ratio and its rollover provisions were adopted, the settlement history that gave rise to its calculation, and the foreseeability or lack of foreseeability of the reasons why there would be any need to make an amendment. In that regard, the Trustee should keep in mind the interplay between the Payment Percentage and the Claims Payment Ratio as it affects the net cash actually paid to claimants.

No amendment to the Claims Payment Ratio may be made without the consent of the TAC members and the consent of the FCR. The consent process set forth in Sections 5.7(b) and 6.6(b) of the Trust Agreement shall apply in the event of any amendments to the Claims Payment Ratio. The Trustee, with the consent of the TAC and the FCR, may offer the option of a reduced Payment Percentage to holders of claims in either Category A or Category B in return for prompter payment (the "**Reduced Payment Option**"). The Trustee shall provide notice within ten (10) days to the U.S. Trustee of any amendment to the Claims Payment Ratio and of any implementation of the Reduced Payment Option.

**2.6 Indirect Trust Claims.** As set forth in Section 5.5 below, any Indirect Trust Claim shall be subject to the same categorization, evaluation, and payment provisions of this TDP as all other Asbestos Claims.

## SECTION 3.

## TDP ADMINISTRATION

**3.1 Trust Advisory Committee and Future Claimants' Representative.** Pursuant to the Plan and the Trust Agreement, the Asbestos Trust and this TDP shall be administered by the Trustee in consultation with the TAC, which represents the interests of holders of present Asbestos Claims, and the FCR, who represents the interests of holders of Asbestos Claims that shall be asserted in the future. The Trustee shall obtain the consent of the TAC and the FCR on any amendments to this TDP pursuant to Section 8.1 below, and on such other matters as are otherwise required below and in Section 2.2(f) of the Trust Agreement. The Trustee shall also consult with the TAC and the FCR on such matters as are provided below and in Section 2.2(e) of the Trust Agreement. The initial Trustee, the initial members of the TAC and the initial FCR are identified in the Trust Agreement. The Trustee shall provide notice to the U.S. Trustee of the occurrence of any consultations and, to the extent practicable, the issues under discussion and the provision of any consents described in this Section 3.1.

**3.2 Consent and Consultation Procedures.** In those circumstances in which consultation or consent is required, the Trustee shall provide written notice to the TAC and the FCR of the specific amendment or other action that is proposed. The Trustee shall not implement such amendment nor take such action unless and until the parties have engaged in the Consultation Process described in Sections 5.7(a) and 6.6(a), or the Consent Process described in Sections 5.7(b)

and 6.6(b), of the Trust Agreement, respectively. The Trustee shall provide notice to the U.S. Trustee of the occurrence of any such consultations and, to the extent practicable, the issues under discussion and the provision of any such consents.

**SECTION 4.**

**PAYMENT PERCENTAGE; PERIODIC ESTIMATES**

**4.1 Uncertainty of Debtors' Personal Injury Asbestos Liabilities.** As discussed above, there is inherent uncertainty regarding the Debtors' total asbestos-related tort liabilities, as well as the total value of the assets available to the Asbestos Trust to pay Asbestos Claims. Consequently, there is inherent uncertainty regarding the amounts that holders of Asbestos Claims shall receive. To seek to ensure substantially equivalent treatment of all present and future Asbestos Claims, the Trustee must determine from time to time the percentage of full liquidated value that holders of present and future Asbestos Claims shall be likely to receive, *i.e.*, the "**Payment Percentage**" described in Section 2.3 above and Section 4.2 below.

**4.2 Computation of Payment Percentage.** As provided in Section 2.3 above, the Payment Percentage shall be established by the Trustee with the consent of the TAC and the FCR, and shall apply to all Trust Claims.

The Payment Percentage shall be subject to change pursuant to the terms of this TDP and the Trust Agreement if the Trustee with the consent of the TAC and FCR determines that an adjustment is required. No less frequently than once every three (3) years, commencing with the first day of January occurring after the Effective Date, the Trustee shall reconsider the then-applicable Payment Percentage to assure that it is based on accurate, current information and may, after such reconsideration, change the Payment Percentage if necessary with the consent of the TAC and the FCR. The Trustee shall also reconsider the then-applicable Payment Percentage at shorter intervals if he or she deems such reconsideration to be appropriate or if requested to do so

by the TAC or the FCR. In any event, no less frequently than once every twelve (12) months commencing on the date that the Asbestos Trust first makes available the proof of claim forms and other claims materials required to file a claim with the Asbestos Trust (the six-month anniversary of the date the Asbestos Trust first makes available the proof of claim form and other claims materials required to file a claim being referred to herein as the "**Initial Claims Filing Date**"), the Trustee shall compare the liability forecast on which the then applicable Payment Percentage is based with the actual claims filing and payment experience of the Asbestos Trust to date. If the results of the comparison call into question the ability of the Asbestos Trust to continue to rely upon the current liability forecast, the Trustee shall undertake a reconsideration of the Payment Percentage.

The Trustee must base his or her determination of the Payment Percentage on current estimates of the number, types, and values of present and future Asbestos Claims, the value of the assets then available to the Asbestos Trust for their payment, all anticipated administrative and legal expenses, and any other material matters that are reasonably likely to affect the sufficiency of funds to pay a comparable percentage of full value to all holders of Asbestos Claims. When making these determinations, the Trustee shall exercise common sense and flexibly evaluate all relevant factors.

The Trustee shall provide notice within ten (10) days to the U.S. Trustee of the establishment of the Payment Percentage and of any changes in the Payment Percentage.

**4.3 Applicability of the Payment Percentage.** Except as otherwise provided (a) in Section 5.1(b) below for Asbestos Claims involving deceased or incompetent claimants for which approval of the Asbestos Trust's offer by a court or through a probate process is required, (b) in the paragraph below with respect to Released Claims, and (c) in Section 2.5 above with respect to

Asbestos Claims whose payment is delayed as a result of the Claims Payment Ratio, no holder of any other Asbestos Claim shall receive a payment that exceeds the liquidated value of the claim times the Payment Percentage in effect at the time of payment; provided, however, that if there is a reduction in the Payment Percentage, the Trustee, in his or her sole discretion, may cause the Asbestos Trust to pay an Asbestos Claim based on the Payment Percentage that was in effect prior to the reduction if such Asbestos Claim was filed and actionable with the Asbestos Trust ninety (90) days or more prior to the date the Trustee proposed the new Payment Percentage in writing to the TAC and the FCR (the "**Proposal Date**") and the processing of such claim was unreasonably delayed due to circumstances beyond the control of the claimant or the claimant's counsel, but only if such claim had no deficiencies for the ninety (90) days prior to the Proposal Date.

If a redetermination of the Payment Percentage has been proposed in writing by the Trustee to the TAC and the FCR but has not yet been adopted, the claimant shall receive the lower of the current Payment Percentage or the proposed Payment Percentage. However, if the proposed Payment Percentage was the lower amount but was not subsequently adopted, the claimant shall thereafter receive the difference between the lower proposed amount and the higher current amount. Conversely, if the proposed Payment Percentage was the higher amount and was subsequently adopted, the claimant shall thereafter receive the difference between the lower current amount and the higher adopted amount.

Notwithstanding anything contained herein, if the proposed Payment Percentage is lower than the current Payment Percentage, a claimant whose Asbestos Claim was liquidated prior to the Proposal Date and who either (a) transmitted[3] an executed release to the Asbestos Trust prior to

3 For purposes of this sentence, "transmitted" is defined as the date/time postmarked if submitted by mail or the date/time uploaded if submitted electronically.

the Proposal Date or (b) with respect to those claimants who had received releases fewer than thirty (30) days prior to the Proposal Date, transmitted an executed release to the Asbestos Trust within thirty (30) days of the claimant's receipt of the release (the claims described in (a) and (b) are collectively referred to herein as the "**Released Claims**") shall be paid based on the current Payment Percentage (the "**Released Claims Payment Percentage**"). For purposes hereof, (a) a claimant represented by counsel shall be deemed to have received a release on the date that the claimant's counsel receives the release, (b) if the Asbestos Trust transmits a release electronically, the release shall be deemed to have been received on the date the Asbestos Trust transmits the offer notification, and (c) if the Asbestos Trust places the release in the U.S. mail, postage prepaid, the release shall be deemed to have been received three (3) business days after such mailing date. A delay in the payment of the Released Claims for any reason, including delays resulting from limitations on payment amounts in a given year pursuant to Section 2.4 or Section 2.5 hereof, shall not affect the rights of the holders of the Released Claims to be paid based on the Released Claims Payment Percentage.

At least thirty (30) days prior to proposing in writing to the TAC and the FCR a change in the Payment Percentage, the Trustee shall issue a written notice to claimants or claimants' counsel indicating that the Trustee is reconsidering such Payment Percentage. The ~~U.S.~~ Trustee shall ~~receive the same~~ provide written notice within ten (10) days to the U.S. Trustee regarding any ~~as the TAC abd the FCR regarding a proposed~~ change in the payment percentage.

If the Trustee, with the consent of the TAC and the FCR, makes a determination to increase the Payment Percentage, the Trustee shall make supplemental payments to all claimants who previously liquidated their claims against the Asbestos Trust and received payments based on a lower Payment Percentage. The amount of any such supplemental payment shall be the liquidated value of the claim in question times the newly adjusted Payment Percentage, less all amounts

previously paid to the claimant with respect to the claim (excluding the portion of such previously paid amounts that was attributable to any sequencing adjustment paid pursuant to Section 7.5 below).

The Trustee's obligation to make a supplemental payment to a claimant shall be suspended in the event the payment in question would be less than $250, and the amount of the suspended payment shall be added to the amount of any prior supplemental payment/payments that was/were also suspended because it/they would have been less than $250. However, the Trustee's obligation shall resume and the Trustee shall pay any such aggregate supplemental payments due the claimant at such time that the total exceeds $250.

The Trustee shall provide notice within ten (10) days to the U.S. Trustee of any changes in the Payment Percentage.

## SECTION 5.

## RESOLUTION OF ASBESTOS CLAIMS.

### 5.1 Ordering, Processing and Payment of Asbestos Claims.

#### 5.1(a) Ordering of Claims.

**5.1(a)(1) Establishment of the FIFO Processing Queue.** The Asbestos Trust shall order claims that are sufficiently complete to be reviewed for processing purposes on a FIFO basis except as otherwise provided herein (the "**FIFO Processing Queue**"). The claimant's position in the FIFO Processing Queue shall be determined by the date the claim is filed with the Asbestos Trust. If any claims are filed on the same date, the claimant's position in the FIFO Processing Queue shall be determined by the date of the diagnosis of the asbestos-related disease for which the claim was filed. If any claims are filed and diagnosed on the same date, the claimant's position in the FIFO Processing Queue shall be determined by the claimant's date of birth, with older claimants given priority over younger claimants.

**5.1(a)(2) Effect of Statutes of Limitation and Repose.** All unliquidated Asbestos Claims must meet either (i) for claims first filed in the tort system against a Debtor prior to the Petition Date, the applicable federal or state statute of limitation and repose that was in effect at the time of the filing of the claim in the tort system, or (ii) for claims not filed against a Debtor in the tort system prior to the Petition Date, the applicable federal or state statute of limitation that was in effect at the time of the filing with the Asbestos Trust. However, the running of the relevant statute of limitation shall be tolled as of the earliest of (A) the actual filing of the claim against a Debtor prior to the Petition Date, whether in the tort system or by submission of the claim to a Debtor pursuant to an administrative settlement agreement; (B) the tolling of the claim against a Debtor prior to the Petition Date by an agreement or otherwise, provided such tolling is still in effect on the Petition Date; or (C) the Petition Date.

If an Asbestos Claim meets any of the tolling provisions described in the preceding sentence and the claim was not barred by the applicable federal or state statute of limitation at the time of the tolling event, it shall be treated as timely filed if it is actually filed with the Asbestos Trust within three (3) years after the Initial Claims Filing Date, or within three (3) years after the date of the diagnosis of the disease for which the claim is filed, whichever occurs later. In addition, any Asbestos Claims that were first diagnosed after the Petition Date, irrespective of the application of any relevant federal or state statute of limitation or repose, may be filed with the Asbestos Trust within three (3) years after the date of diagnosis or within three (3) years after the Initial Claims Filing Date, whichever occurs later. However, the processing of any Asbestos Claim by the Asbestos Trust may be deferred at the election of the claimant pursuant to Section 6.3 below.

**5.1(b) Payment of Claims.** Asbestos Claims that have been liquidated by the Expedited Review Process as provided in Section 5.3(a) below, by arbitration as provided in

Section 5.8 below, or by litigation in the tort system provided in Section 5.9 below, shall be paid in FIFO order based on the date their liquidation became final (the "**FIFO Payment Queue**"), all such payments being subject to the applicable Payment Percentage, the Maximum Annual Payment, the Claims Payment Ratio and the sequencing adjustment provided for in Section 7.5 below, except as otherwise provided herein. Pre-Petition Liquidated Claims, as defined in Section **5.2** below, shall be subject to the Maximum Annual Payment and Payment Percentage limitations.

Where the claimant is deceased or incompetent, and the settlement and payment of his or her claim must be approved by a court of competent jurisdiction or through a probate process prior to acceptance of the claim by the claimant's representative, an offer made by the Asbestos Trust on the claim shall remain open so long as proceedings before that court or in that probate process remain pending, provided that the Asbestos Trust has been furnished with evidence that the settlement offer has been submitted to such court or in the probate process for approval. If the offer is ultimately approved by the court or through the probate process and accepted by the claimant's representative, the Asbestos Trust shall pay the claim in the amount so offered, multiplied by the Payment Percentage in effect at the time the offer was first made.

If any claims are liquidated on the same date, the claimant's position in the FIFO Payment Queue shall be determined by the date of the diagnosis of the claimant's asbestos-related disease for which the claim was filed. If any claims are liquidated on the same date and the respective holders' asbestos-related diseases were diagnosed on the same date, the position of those claims in the FIFO Payment Queue shall be determined by the Asbestos Trust based on the dates of the claimants' birth, with older claimants given priority over younger claimants.

**5.2 Resolution of Pre-Petition Liquidated Claims.**

**5.2(a) Processing and Payment.** As soon as practicable after the Effective Date, the Asbestos Trust shall pay, upon submission by the claimant of the appropriate documentation, all Asbestos Claims that were liquidated by (i) a binding settlement agreement for the particular claim entered into prior to the Petition Date that is judicially enforceable by the claimant, (ii) a jury verdict or non-final judgment in the tort system obtained prior to the Petition Date, or (iii) a judgment that became final and non-appealable prior to the Petition Date (collectively "**Pre-Petition Liquidated Claims**"). In order to receive payment from the Asbestos Trust, the holder of a Pre-Petition Liquidated Claim must submit all documentation necessary to demonstrate to the Asbestos Trust that the claim was liquidated in the manner described in the preceding sentence, which documentation shall include (A) a copy of the settlement agreement (if applicable), a court-authenticated copy of the jury verdict (if applicable), a non-final judgment (if applicable) or a final judgment (if applicable) and (B) the name, social security number, and date of birth of the claimant, and the name and address of the claimant's lawyer; provided, however, that if a Pre-Petition Liquidated Claim is listed on the schedule of such claims that the Debtors provide to the Asbestos Trust and the claimant confirms the information provided by the Debtors, the claimant shall not be required to provide any additional documentation.

The liquidated value of a Pre-Petition Liquidated Claim shall be the unpaid portion of the amount agreed to in the binding settlement agreement, the unpaid portion of the amount awarded by the jury verdict or non-final judgment or the unpaid portion of the amount of the final judgment, as the case may be, plus interest, if any, that has accrued on that amount in accordance with the terms of the agreement, if any, or under applicable state law for settlements or judgments as of the Petition Date; however, except as otherwise provided in Section 7.4 below, the liquidated value of

a Pre-Petition Liquidated Claim shall not include any punitive or exemplary damages. In addition, the amounts payable with respect to such claims shall be subject to the Maximum Annual Payment and Payment Percentage provisions. In the absence of a Final Order of the Bankruptcy Court determining whether a settlement agreement is binding and judicially enforceable, a dispute between the claimant and the Asbestos Trust over this issue shall be resolved pursuant to the same procedures in this TDP that are provided for resolving the validity and/or liquidated value of an Asbestos Claim (*i.e.*, arbitration and litigation in the tort system as set forth in Sections 5.8 and 5.9 below).

Pre-Petition Liquidated Claims shall be processed and paid in accordance with their order in a separate FIFO queue, to be established by the Asbestos Trust based on the date the Asbestos Trust received all required documentation for the particular claim. If any Pre-Petition Liquidated Claims were filed on the same date, the claimant's position in the FIFO queue for such claims shall be determined by the dates of the claimants' birth, with older claimants given priority over younger claimants.

**5.2(b) Marshalling of Security.** Holders of Pre-Petition Liquidated Claims that are secured by letters of credit, appeal bonds, or other security or sureties shall first exhaust their rights against any applicable security or surety before making a claim against the Asbestos Trust. Only in the event that such security or surety is insufficient to pay the Pre-Petition Liquidated Claim in full shall the deficiency be processed and paid as a Pre-Petition Liquidated Claim.

**5.3 Resolution of Unliquidated Asbestos Claims.** As soon as possible after the establishment of the Asbestos Trust, the Trustee, with the consent of the TAC and the FCR, shall adopt procedures for reviewing and liquidating all unliquidated Asbestos Claims, which shall include deadlines for processing such claims. Such procedures shall also require that claimants

seeking resolution of unliquidated Asbestos Claims must first file a proof of claim form, together with the required supporting documentation, in accordance with the provisions of Sections 6.1 and 6.2 below. It is anticipated that the Asbestos Trust shall provide an initial response to the claimant within three (3) months of receiving the proof of claim form. The Trustee shall provide notice to the U.S. Trustee of the adoption of the procedures and the procedures.

The proof of claim form shall require the claimant to assert his or her claim for the highest Disease Level for which the claim qualifies at the time of filing. Irrespective of the Disease Level alleged on the proof of claim form, all claims shall be deemed to be a claim for the highest Disease Level for which the claim qualifies at the time of filing, and all lower Disease Levels for which the claim may also qualify at the time of filing or in the future shall be treated as subsumed into the higher Disease Level for both processing and payment purposes.

Upon filing of a valid proof of claim form with the required supporting documentation, the claimant shall be placed in the FIFO Processing Queue in accordance with the ordering criteria described in Section 5.1(a)(1) above.

**5.3(a) Expedited Review Process.**

**5.3(a)(1) In General.** The Asbestos Trust's Expedited Review Process is designed primarily to provide an expeditious, efficient and inexpensive method for liquidating all Asbestos Claims eligible for payment under this TDP. Expedited Review is also intended to provide qualifying claimants a fixed and certain claims payment.

Thus, claims that undergo Expedited Review and meet the presumptive Medical/ Exposure Criteria for the relevant Disease Level shall be paid the Scheduled Value for such Disease Level set forth in Section 5.3(a)(3) below. All claims liquidated by Expedited Review shall be subject

to the applicable Payment Percentage, Maximum Annual Payment, Maximum Available Payment and Claims Payment Ratio limitations set forth above.

Subject to the provisions of Section 5.7, the claimant's eligibility to receive the Scheduled Value for his or her Asbestos Claim pursuant to the Expedited Review Process shall be determined solely by reference to the Medical/Exposure Criteria set forth below.

**5.3(a)(2) Claims Processing Under Expedited Review.** All claimants seeking liquidation of their claims pursuant to Expedited Review shall file the Asbestos Trust's proof of claim form. As a proof of claim form is reached in the FIFO Processing Queue, the Asbestos Trust shall determine whether the claim described therein meets the Medical/Exposure Criteria for one of the Disease Levels, and shall advise the claimant of its determination. If a Disease Level is determined, the Asbestos Trust shall tender to the claimant an offer of payment of the Scheduled Value for the relevant Disease Level multiplied by the applicable Payment Percentage, together with a form of release approved by the Asbestos Trust. If the claimant accepts the Scheduled Value and returns the release properly executed, the claim shall be placed in the FIFO Payment Queue, following which the Asbestos Trust shall disburse payment subject to the limitations of the Maximum Annual Payment and the Claims Payment Ratio.

**5.3(a)(3) Disease Levels, Scheduled Values and Medical/Exposure Criteria.** The five Disease Levels covered by this TDP, together with the Medical/Exposure Criteria and the Scheduled Values for each are set forth below. These Disease Levels, Scheduled Values, and Medical/Exposure Criteria shall apply to all Asbestos Claims filed with the Asbestos Trust (except Pre-Petition Liquidated Claims) on or before the Initial Claims Filing Date provided in Section 4.2. Thereafter, for purposes of administering the Expedited Review Process and with the consent of the TAC and the FCR, the Trustee may add to, change, or eliminate Disease Levels,

Scheduled Values, or Medical/Exposure Criteria; develop subcategories of Disease Levels, Scheduled Values or Medical/Exposure Criteria; or determine that a novel or exceptional asbestos personal injury claim is compensable even though it does not meet the Medical/Exposure Criteria for any of the then-current Disease Levels. The Trustee shall notify the U.S. Trustee of any actions taken pursuant to the preceding sentence. In addition, commencing on January 1, 2020, the Asbestos Trust shall increase these valuation amounts by one percent (1%) per annum. Any such increases shall be applicable to offers made following the dates of such increases.

| **Disease Level** | **Scheduled Value** | **Medical/Exposure Criteria** |
|---|---|---|
| Mesothelioma (Level V) | $140,000 | (1) Diagnosis[4] of mesothelioma, and (2) Debtor Exposure as defined in Section 5.6(b)(3). |
| Lung Cancer 1 (Level IV) | $50,000 | (1) Diagnosis of a primary lung cancer plus evidence of an underlying Bilateral Asbestos-Related Nonmalignant Disease,[5] (2) six months |

4 The requirements for a diagnosis of an asbestos-related disease that may be compensated under the provisions of this TDP are set forth in Section 5.6 below.

5 Evidence of "Bilateral Asbestos-Related Nonmalignant Disease," for purposes of meeting the criteria for establishing Disease Levels II and IV, means either (i) a chest X-ray read by a qualified B reader of 1/0 or higher on the ILO scale or (ii)(x) a chest X-ray read by a qualified B reader or other Qualified Physician, (y) a CT scan read by a Qualified Physician, or (z) pathology, in each case showing either bilateral interstitial fibrosis, bilateral pleural plaques, bilateral pleural thickening, or bilateral pleural calcification. Evidence submitted to demonstrate (i) or (ii) above must be in the form of a written report stating the results (*e.g.*, an ILO report, a written radiology report or a pathology report). Solely for asbestos claims filed against a Debtor or another defendant in the tort system prior to the Petition Date, if an ILO reading is not available, either (i) a chest X-ray or a CT scan read by a Qualified Physician, or (ii) pathology, in each case showing bilateral interstitial fibrosis, bilateral pleural plaques, bilateral pleural thickening, or bilateral pleural calcification consistent with or compatible with a diagnosis of asbestos-related disease, shall be evidence of a Bilateral Asbestos-Related Nonmalignant Disease for purposes of meeting the presumptive medical requirements of Disease Levels II and IV. Pathological proof of asbestosis may be based on the pathological grading system for asbestosis described in the Special Issue of the Archives of Pathology and Laboratory Medicine, "Asbestos-associated Diseases," Vol. 106, No. 11, App. 3 (October 8, 1982). For all purposes of this TDP, a "Qualified Physician" is a physician who is board-certified in one or more relevant specialized fields of medicine such as pulmonology, radiology, internal medicine or occupational medicine; provided, however, subject to the provisions of Section 5.6, that the requirement for board certification in this provision shall

| Disease Level | Scheduled Value | Medical/Exposure Criteria |
|---|---|---|
| | | Debtor Exposure, (3) Significant Occupational Exposure[6] to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the lung cancer in question. |
| Lung Cancer 2 (Level III) | $25,000 | (1) Diagnosis of a primary lung cancer, (2) six months Debtor Exposure, (3) Significant Occupational Exposure to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the lung cancer in question. |
| Other Cancer (Level II) | $20,000 | (1) Diagnosis of a primary colo-rectal, laryngeal, esophageal, pharyngeal, or stomach cancer, plus evidence of an underlying Bilateral Asbestos-Related Nonmalignant Disease, (2) six months Debtor Exposure, (3) Significant Occupational Exposure to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the other cancer in question. |
| Severe Asbestosis (Level I) | $34,000 | (1) Either (a) a diagnosis of asbestosis with ILO of 2/1 or greater, or asbestosis determined by pathological evidence of asbestosis, plus (x) TLC less than 65%, or (y) FVC less than 65% and FEV1/FVC ratio greater than 65%,[7] (b) an "Asbestosis Death," which is defined to mean a death where (x) asbestosis is listed as the cause or a significant contributing cause of death on the death certificate or (y) a report from a Qualified Physician who is a pathologist, a pulmonologist or an occupational medicine physician states that asbestosis was a significant |

not apply to otherwise qualified physicians whose X-ray and/or CT scan readings are submitted for deceased holders of Asbestos Claims. In addition, for all purposes of this TDP, if the diagnostic images being interpreted in such regard are digital images, then a written report by a Qualified Physician confirming that the images reviewed are with reasonable medical certainty equivalent to those that would qualify for the required ILO grade shall be acceptable as well.

6 The term "Significant Occupational Exposure" is defined in Section 5.6(b)(2) below.

7 This must be the actual measured value as opposed to the percentage of predicted.

| Disease Level | Scheduled Value | Medical/Exposure Criteria |
|---|---|---|
| | | contributing cause of death, or (c) a diagnosis of asbestosis with ILO of 2/1 or greater, or asbestosis determined by pathological evidence of asbestosis, plus (x) a Qualified Physician who is a pulmonologist or an occupational medicine physician prescribes oxygen to the injured party, (y) the treating Qualified Physician states that the predominant cause of the need for oxygen is asbestosis, and (z) the oxygen is needed by the injured party to perform activities of daily life (e.g., not oxygen that is prescribed only for comfort care, at night, for surgery, or on occasion), (2) six months Debtor Exposure, (3) Significant Occupational Exposure to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the pulmonary disease in question. |

**5.4 Secondary Exposure Claims.** If a claimant alleges an asbestos-related disease resulting solely from exposure to an occupationally exposed person, such as a family member, the claimant must establish that the occupationally exposed person would have met the exposure requirements under this TDP that would have been applicable had that person filed a direct claim against the Asbestos Trust. In addition, the claimant with secondary exposure must establish that he or she is suffering from one of the five Disease Levels described in Section 5.3(a)(3) above, that his or her own exposure to the occupationally exposed person occurred within the same time frame as the occupationally exposed person was exposed to asbestos, asbestos-containing products, or conduct for which the Asbestos Trust has legal responsibility, and that such secondary exposure was a cause of the claimed disease. All other liquidation and payment rights and limitations under this TDP shall be applicable to such claims.

**5.5 Indirect Trust Claims.** Indirect Trust Claims asserted against the Asbestos Trust shall be treated as presumptively valid and paid by the Asbestos Trust subject to the applicable

Payment Percentage if (a) such claim satisfied the requirements of the Bar Date for such claims established by the Bankruptcy Court, if applicable, and is not otherwise disallowed by Section 502(e) of the Code or subordinated under Section 509(c) of the Code, and, and (b) the holder of such claim (the "**Indirect Claimant**") establishes to the satisfaction of the Trustee that (i) the Indirect Claimant has paid in full the liability and obligation of the Asbestos Trust to the individual claimant to whom the Asbestos Trust would otherwise have had a liability or obligation under this TDP (the "**Direct Claimant**"), (ii) the Direct Claimant and the Indirect Claimant have forever and fully released the Asbestos Trust from all liability to the Direct Claimant, and (iii) the claim is not otherwise barred by a statute of limitation or repose or by other applicable law. In no event shall any Indirect Claimant have any rights against the Asbestos Trust superior to the rights of the related Direct Claimant against the Asbestos Trust, including any rights with respect to the timing, amount or manner of payment. In addition, no Indirect Trust Claim may be liquidated and paid in an amount that exceeds what the Indirect Claimant has actually paid the related Direct Claimant.

To establish a presumptively valid Indirect Trust Claim, the Indirect Claimant's aggregate liability for the Direct Claimant's claim must also have been fixed, liquidated and paid fully by the Indirect Claimant by settlement (with an appropriate full release in favor of the Asbestos Trust) or a Final Order (as defined in the Plan) provided that such claim is valid under the applicable state law. In any case where the Indirect Claimant has satisfied the claim of a Direct Claimant against the Asbestos Trust under applicable law by way of a settlement, the Indirect Claimant shall obtain for the benefit of the Asbestos Trust a release in form and substance satisfactory to the Trustee.

If an Indirect Claimant cannot meet the presumptive requirements set forth above, including the requirement that the Indirect Claimant provide the Asbestos Trust with a full release of the Direct Claimant's claim, the Indirect Claimant may request that the Asbestos Trust review

the Indirect Trust Claim individually to determine whether the Indirect Claimant can establish under applicable state law that the Indirect Claimant has paid all or a portion of a liability or obligation that the Asbestos Trust had to the Direct Claimant. If the Indirect Claimant can show that it has paid all or a portion of such a liability or obligation, the Asbestos Trust shall reimburse the Indirect Claimant the amount of the liability or obligation so paid, times the then applicable Payment Percentage. However, in no event shall such reimbursement to the Indirect Claimant be greater than the amount to which the Direct Claimant would have otherwise been entitled. Further, the liquidated value of any Indirect Trust Claim paid by the Asbestos Trust to an Indirect Claimant shall be treated as an offset to or reduction of the full liquidated value of any Asbestos Claim that might be subsequently asserted by the Direct Claimant against the Asbestos Trust.

Any dispute between the Asbestos Trust and an Indirect Claimant over whether the Indirect Claimant has a right to reimbursement for any amount paid to a Direct Claimant shall be subject to the ADR Procedures provided in Section 5.8 below. If such dispute is not resolved by said ADR Procedures, the Indirect Claimant may litigate the dispute in the tort system pursuant to Sections 5.9 and 7.6 below.

Notwithstanding any provision in this TDP or any other Plan Document, because the Non-Settling Asbestos Insurers have received the benefit of certain credits and judgment reduction, as set forth in and subject to the terms and conditions of Sections 4.14 and 4.15 of the Plan, any claim of a Non-Settling Asbestos Insurer shall not be eligible for payment or compensation from the Asbestos Trust under this Section 5.5.

The Trustee may develop and approve a separate proof of claim form for Indirect Trust Claims. Indirect Trust Claims that have not been disallowed, discharged, or otherwise resolved by prior order of the Bankruptcy Court shall be processed in accordance with procedures to be

developed and implemented by the Trustee consistent with the provisions of this Section 5.5, which procedures (a) shall determine the validity, acceptability and enforceability of such claims; and (b) shall otherwise provide the same liquidation and payment procedures and rights to the holders of such claims as the Asbestos Trust would have afforded the holders of the underlying valid Asbestos Claims.

**5.6 Evidentiary Requirements.**

**5.6(a) Medical Evidence.**

**5.6(a)(1) In General.** All diagnoses of a Disease Level shall be accompanied by either (i) a statement by the physician providing the diagnosis that at least ten (10) years have elapsed between the date of first exposure to asbestos or asbestos-containing products and the diagnosis, or (ii) a history of the claimant's exposure sufficient to establish a 10-year latency period.

**5.6(a)(1)(A) Disease Level I.** All diagnoses of Severe Asbestosis (Disease Level I) shall be based, in the case of a claimant who was living at the time the claim was filed, upon a physical examination of the claimant by the physician providing the diagnosis of the asbestos-related disease. All living claimants must also provide (i) an ILO reading of 2/1 or greater or pathological evidence of asbestosis and (ii) pulmonary function testing (unless the claimant is able to meet the requirements in (1)(c) of the Medical/Exposure Criteria for Severe Asbestosis in Section 5.3(a)(3) above).[8]

---

8 "Pulmonary function testing" or "PFT" shall mean testing that is in material compliance with the quality criteria established by the American Thoracic Society ("ATS") and is performed on equipment which is in material compliance with ATS standards for technical quality and calibration. PFT performed in a hospital accredited by The Joint Commission ("**JC**"), or performed, reviewed or supervised by a board certified pulmonologist or other Qualified Physician shall be presumed to comply with ATS standards, and the claimant may submit a summary report

In the case of a claimant who was deceased at the time the claim was filed, all diagnoses of Severe Asbestosis (Disease Level I) shall be based upon either (i) a physical examination of the claimant by the physician providing the diagnosis along with an ILO reading of 2/1 or greater, (ii) pathological evidence of asbestosis, or (iii) the medical documentation required for an "Asbestosis Death" in Section 5.3(a)(3) above. In the case of a diagnosis based on (i) or (ii), the claimant must also provide pulmonary function testing (unless the claimant is able to meet the requirements in (1)(c) of the Medical/Exposure Criteria for Severe Asbestosis in Section 5.3(a)(3) above).

**5.6(a)(1)(B) Disease Levels II-V.** All diagnoses of an asbestos-related malignancy (Disease Levels II-V) shall be based upon either (i) a physical examination of the claimant by the physician providing the diagnosis of the asbestos-related disease, or (ii) a diagnosis of such a malignant Disease Level by a board-certified pathologist or by a pathology report prepared at or on behalf of a hospital accredited by The Joint Commission.

**5.6(a)(2) Credibility of Medical Evidence.** Before making any payment to a claimant, the Asbestos Trust must have reasonable confidence that the medical evidence provided in support of the claim is credible and consistent with recognized medical standards. The Asbestos Trust may require the submission of X-rays, CT scans, detailed results of pulmonary function tests, laboratory tests, tissue samples, results of medical examination or reviews of other medical evidence, and may require that medical evidence submitted comply with recognized medical standards regarding equipment, testing methods and procedures to assure that

---

of the testing. If the PFT was not performed in a JC-accredited hospital, or performed, reviewed or supervised by a board certified pulmonologist or other Qualified Physician, the claimant must submit the full report of the testing (as opposed to a summary report); provided, however, that if the PFT was conducted prior to the Effective Date of the Plan and the full PFT report is not available, the claimant must submit a declaration signed by a Qualified Physician or other qualified party, in the form provided by the Asbestos Trust, certifying that the PFT was conducted in material compliance with ATS standards.

such evidence is reliable. Medical evidence (i) that is of a kind shown to have been received in evidence by a state or federal judge at trial, (ii) that is consistent with evidence submitted to a Debtor to settle for payment similar disease cases prior to the Debtors' bankruptcy, or (iii) that is a diagnosis by a physician shown to have previously qualified as a medical expert with respect to the asbestos-related disease in question before a state or federal judge, is presumptively reliable, although the Asbestos Trust may seek to rebut the presumption. In addition, claimants who otherwise meet the requirements of this TDP for payment of an Asbestos Claim shall be paid irrespective of the results in any litigation at any time between the claimant and any other defendant in the tort system. However, any relevant evidence submitted in a proceeding in the tort system, other than any findings of fact, a verdict, or a judgment, involving another defendant may be introduced by either the claimant or the Asbestos Trust in any Arbitration proceeding conducted pursuant to 5.8.

**5.6(a)(3) Reliance by Asbestos Trust on Finding of another Asbestos Trust.** The Trustee may review the governing documents of another asbestos trust or claims facility and, with the consent of the TAC and the FCR, determine to accept the disease level classifications as found by such other asbestos trust or claims facility in lieu of the medical evidence claimants are required to submit under this TDP. The Trustee shall provide notice within ten (10) days to the U.S. Trustee of any such determination.

**5.6(b) Exposure Evidence.**

**5.6(b)(1) In General.** As set forth above in Section 5.3(a)(3), to qualify for any Disease Level, the claimant must demonstrate a minimum exposure to asbestos, asbestos-containing products, or conduct for which the Asbestos Trust has legal responsibility. Claims based on conspiracy theories that involve no exposure to asbestos, asbestos-containing

products, or conduct for which the Asbestos Trust has legal responsibility are not compensable under this TDP. To meet the presumptive exposure requirements of Expedited Review set forth in Section 5.3(a)(3) above, the claimant must show (i) for all Disease Levels, Debtor Exposure as defined in Section 5.6(b)(3) below; and (ii) for Severe Asbestosis (Disease Level I), Other Cancer (Disease Level II), or Lung Cancer 1 or 2 (Disease Levels III and IV), the claimant must show six (6) months Debtor Exposure plus Significant Occupational Exposure to asbestos.

**5.6(b)(2) Significant Occupational Exposure.** "**Significant Occupational Exposure**" means employment for a cumulative period of at least five (5) years in an industry and an occupation in which the claimant (a) handled raw asbestos fibers on a regular basis; (b) fabricated asbestos-containing products so that the claimant in the fabrication process was exposed on a regular basis to raw asbestos fibers; (c) altered, repaired or otherwise worked with an asbestos-containing product such that the claimant was exposed on a regular basis to asbestos fibers; or (d) was employed in an industry and occupation such that the claimant worked on a regular basis in close proximity to workers engaged in the activities described in (a), (b) and/or (c).

**5.6(b)(3) Debtor Exposure.** The claimant must demonstrate meaningful and credible exposure to asbestos, asbestos-containing products, or conduct for which the Asbestos Trust has legal responsibility as described in this Section 5.6(b)(3) ("**Debtor Exposure**"). That meaningful and credible exposure evidence may be established by an affidavit or sworn statement of the claimant, by an affidavit or sworn statement of a co-worker or the affidavit or sworn statement of a family member in the case of a deceased claimant (providing the Asbestos Trust finds such evidence reasonably reliable), by invoices, employment, construction or similar records, or by other credible evidence. The specific exposure information required by the

Asbestos Trust to process a claim shall be set forth on the proof of claim form to be used by the Asbestos Trust. The Asbestos Trust can also require submission of other or additional evidence of exposure when it deems such to be necessary.

The Asbestos Trust has no need for, and therefore claimants are not required to furnish the Asbestos Trust with, evidence of exposure to specific asbestos products other than those for which a Debtor has legal responsibility, except to the extent such evidence is required elsewhere in this TDP. Similarly, failure to identify a Debtor's products in the claimant's underlying tort action, or to other bankruptcy trusts, does not preclude the claimant from recovering from the Asbestos Trust, provided the claimant otherwise satisfies the medical and exposure requirements of this TDP.

**5.6(b)(3)(A) Qualifying Occupations.** Because of the nature of the Debtors' business, the Asbestos Trust shall consider that there is a limited universe of occupations in which claimants are likely to have been directly exposed to asbestos, asbestos-containing products, or conduct for which the Asbestos Trust has legal responsibility. Those occupations are sheet metal mechanic, sheet metal worker, sheet metal apprentice, HVAC repairman, HVAC installer, HVAC technician, duct installer, and furnace installer (the "**Qualifying Occupations**"). The Asbestos Trust may add occupations to the Qualifying Occupations. The Asbestos Trust may also remove occupations from the Qualifying Occupations if it determines that such occupations should not have been included.

**5.6(b)(3)(B) Standard of Exposure.** In order for a claim to be approved by the Asbestos Trust, the injured party must have worked in a Qualifying Occupation and must demonstrate to the Asbestos Trust's satisfaction that he or she worked directly with Duro

Dyne asbestos-containing flexible duct connectors.[9] When evaluating whether an injured party has demonstrated that he or she worked directly with Duro Dyne asbestos-containing flexible duct connectors, the Asbestos Trust shall base its determination upon whether the circumstances of the injured party's exposure to the product are the same as those of claimants with respect to which the Debtors historically paid claims.

**5.6(b)(3)(C) Non-Qualifying Occupations.** If an injured party did not work in one of the Qualifying Occupations but believes that he or she can demonstrate the requisite direct exposure to Duro Dyne asbestos-containing flexible duct connectors, he or she may present evidence of such exposure to the Asbestos Trust for the Asbestos Trust's consideration, and, if the Asbestos Trust approves the claim, the claimant shall receive the Scheduled Value for the applicable Disease Level, subject to the Payment Percentage and the Maximum Annual Payment and Claims Payment Ratio provisions above.

**5.7 Claims Audit Program.** The Asbestos Trust, with the consent of the TAC and the FCR, shall develop a Claims Audit Program. The Trustee shall provide notice to the U.S. Trustee of the adoption of the Claims Audit Program and upon request, the details of the Claims Audit Program. Such Claims Audit Program may include methods for auditing the reliability of medical evidence, including additional reading of X-rays, CT scans and verification of pulmonary function tests, as well as the reliability of evidence of exposure to asbestos, including exposure to asbestos-containing products for which the Asbestos Trust has legal responsibility. The Asbestos Trust shall participate in any cross-trust audit program that is available to trusts who process claims through

9 Based on the Debtors' history, the Asbestos Trust believes that flexible duct connectors are the only asbestos-containing product for which the Asbestos Trust has legal responsibility. A claimant may seek to prove that other such products exist, in which case the Asbestos Trust shall review the evidence and make a determination. If the Asbestos Trust determines that the Asbestos Trust is responsible for other asbestos-containing products, the Trustee, the TAC and the FCR shall amend this TDP to add references to such products to the relevant provisions of this TDP.

the Asbestos Trust's chosen claims processor. In the event that the Asbestos Trust reasonably determines that any individual or entity has engaged in a pattern or practice of providing unreliable medical evidence to the Asbestos Trust, it may decline to accept additional evidence from such provider in the future.

Further, in the event that an audit reveals that fraudulent information has been provided to the Asbestos Trust, the Asbestos Trust may penalize any claimant or claimant's attorney by rejecting the Asbestos Claim or by other means including, but not limited to, requiring the source of the fraudulent information to pay the costs associated with the audit and any future audit or audits, reordering the priority of payment of all affected claimants' Asbestos Claims, raising the level of scrutiny of additional information submitted from the same source or sources, refusing to accept additional evidence from the same source or sources, seeking the prosecution of the claimant or claimant's attorney for presenting a fraudulent claim in violation of 18 U.S.C. § 152, and seeking sanctions from the Bankruptcy Court.

**5.8 Arbitration.**

**5.8(a) Establishment of ADR Procedures.** The Asbestos Trust, with the consent of the TAC and the FCR, shall institute binding and non-binding arbitration procedures in accordance with Alternative Dispute Resolution ("**ADR**") Procedures to be established by the Trustee, with the consent of the TAC and the FCR, for resolving disputes concerning whether a pre-petition settlement agreement with a Debtor is binding and judicially enforceable in the absence of a Final Order of the Bankruptcy Court determining the issue, whether the Asbestos Trust's outright rejection or denial of a claim was proper, or whether the claimant's medical condition or exposure history meets the requirements of this TDP for purposes of categorizing a claim involving Disease Levels I-V. Binding and non-binding arbitration shall also be available

for resolving disputes over a Debtor's share of the unpaid portion of a Pre-Petition Liquidated Claim described in Section 5.2 above and disputes over the validity of an Indirect Trust Claim.

In all arbitrations, the arbitrator shall consider the same medical and exposure evidentiary requirements that are set forth in Section 5.6 above. With respect to all claims eligible for arbitration, the claimant, but not the Asbestos Trust, may elect either non-binding or binding arbitration. The ADR Procedures may be modified by the Asbestos Trust with the consent of the TAC and the FCR.

The Trustee shall provide notice to the U.S. Trustee of the establishment of ADR Procedures and of any modifications to such ADR Procedures.

**5.8(b) Limitations on and Payment of Arbitration Awards.** The arbitrator shall not return an award in excess of the Scheduled Value for any claim. A claimant who submits to arbitration and who accepts the arbitral award shall receive payments in the same manner as one who accepts the Asbestos Trust's original valuation of the claim.

**5.9 Litigation.** Claimants who elect non-binding arbitration and then reject their arbitral awards retain the right to institute a lawsuit in the tort system against the Asbestos Trust pursuant to Section 7.6 below. However, a claimant shall be eligible for payment of a judgment for monetary damages obtained in the tort system from the Asbestos Trust's available cash only as provided in Section 7.7 below.

**5.10 Claims Covered by Policies Issued by Non-Settling Asbestos Insurers.** In the event that a claimant ("**Tort Claimant**") pursues the rights afforded by Section 4.13 of the Plan to bring litigation against the Reorganized Debtor for the purpose of seeking recovery from a Non-Settling Asbestos Insurer to obtain the benefit of Asbestos Insurance Coverage, then the Tort Claimant shall so advise the Asbestos Trust. Such notification to the Asbestos Trust of intention to

pursue the rights granted under Section 4.13 of the Plan shall not affect the processing by the Asbestos Trust of any Asbestos Claim filed by the Tort Claimant or the payment to the Tort Claimant of any amount that would otherwise be due to the Tort Claimant as an unliquidated claim pursuant to this TDP (a "**Current Trust Payment**"). In response to a request (a) from the Reorganized Debtor or (b) from any Non-Settling Asbestos Insurer that is providing a defense to an action brought under Section 4.13 of the Plan by a Tort Claimant, or against which an action is brought by such Tort Claimant under Section 4.14 of the Plan, the Asbestos Trust shall promptly provide information as to the amount and timing of any Current Trust Payments. Upon notification and proof to the Asbestos Trust's reasonable satisfaction that a Non-Settling Asbestos Insurer has satisfied in full a judgment obtained in an action brought under Section 4.13 or 4.14 of the Plan, then, as provided in Section 4.15(b) of the Plan, the Asbestos Trust shall treat the claim held by the Tort Claimant as being assigned to the Non-Settling Asbestos Insurer(s) that satisfied the judgment for the purpose of paying any further amounts due on the claim to the assignee(s). The Tort Claimant shall hold the Asbestos Trust harmless from and against any and all Indirect Trust Claims that may be asserted against the Asbestos Trust in connection with the litigation, including attorneys' fees and costs associated therewith.

**5.11 Claims against Non-Settling Asbestos Insurers.** The Asbestos Trust, with the consent of the TAC and the FCR, shall institute procedures to be utilized in the event that a Tort Claimant desires to pursue the rights afforded by Section 4.14 of the Plan. The Trustee shall provide notice to the U.S. Trustee of the institution of such procedures and, upon request, a copy of the procedures.

**5.12 Second Disease Claims.** The holder of a Severe Asbestosis (Disease Level I) claim may assert a new Asbestos Claim against the Asbestos Trust for a Lung Cancer 1 (Disease Level IV) or Mesothelioma (Disease Level V) claim that is subsequently diagnosed. Any additional

payments to which such claimant may be entitled with respect to the Lung Cancer 1 (Disease Level IV) or Mesothelioma (Disease Level V) claim shall be reduced by the amount paid to the claimant for the Severe Asbestosis (Disease Level I) claim.

**SECTION 6.**

**CLAIMS MATERIALS**

**6.1 Claims Materials.** The Asbestos Trust shall prepare suitable and efficient claims materials ("**Claims Materials**") for all Asbestos Claims, and shall provide such Claims Materials upon a written request for such materials to the Asbestos Trust. The proof of claim form to be submitted to the Asbestos Trust shall require the claimant to assert the highest Disease Level for which the claim qualifies at the time of filing. The proof of claim form shall also include a certification by the claimant or his or her attorney sufficient to meet the requirements of Rule 11(b) of the Federal Rules of Civil Procedure. In developing its claim filing procedures, the Asbestos Trust shall make every effort to provide claimants with the opportunity to utilize currently available technology at their discretion, including filing claims and supporting documentation over the Internet. The proof of claim form to be used by the Asbestos Trust shall be developed by the Asbestos Trust and submitted to the TAC and the FCR for approval; it may be changed by the Asbestos Trust with the consent of the TAC and the FCR. The Trustee shall provide notice to the U.S. Trustee of the adoption of the proof of claim form, and upon request, a copy of the claim form and of any changes made to such form.

**6.2 Content of Claims Materials.** The Claims Materials shall include a copy of this TDP, such instructions as the Trustee shall approve, and a detailed proof of claim form. This TDP has been prepared with the goal of simplifying the filing of claims, reducing paperwork by claimants, and reducing the cost of reviewing claims in an effort to maximize distribution to claimants. Accordingly, instead of collecting some or all of the claims information from a claimant

or the claimant's attorney, the Asbestos Trust may, with the consent of the claimant or the claimant's attorney, obtain such information from electronic databases maintained by any other asbestos claims resolution organization. If requested by the claimant, the Asbestos Trust shall accept information provided electronically. The claimant may, but shall not be required to, provide the Asbestos Trust with evidence of recovery from other defendants and claims resolution organizations.

**6.3 Deferral of Claims.** A claimant can request that the processing of his or her Asbestos Claim by the Asbestos Trust be deferred for a period not to exceed two (2) years, in which case the claimant shall also retain his or her original place in the FIFO Processing Queue. During the period of such deferral, a sequencing adjustment on such claimant's Asbestos Claim as provided in Section 7.5 hereunder shall not accrue and payment thereof shall be deemed waived by the claimant. Upon written request and good cause, the Asbestos Trust may extend the deferral period for an additional six (6) months. At the end of an Asbestos Claim's deferral period, the Asbestos Claim shall be placed in the FIFO Processing Queue for review by the Asbestos Trust.

**6.4 Filing Requirements and Fees.** Each claimant must submit a filing fee of $50 to have an Asbestos Claim processed by the Asbestos Trust. The fee shall be refunded in full to claimants who receive and accept payment of a settlement offer from the Asbestos Trust.

**6.5 Confidentiality of Claimants' Submissions.** All submissions to the Asbestos Trust by a holder of an Asbestos Claim, including a proof of claim form and materials related thereto, shall be treated as made in the course of settlement discussions between the holder and the Asbestos Trust, and intended by the parties to be confidential and to be protected by all applicable state and federal privileges, including but not limited to those directly applicable to settlement discussions. The Asbestos Trust will preserve the confidentiality of such claimant submissions, and shall disclose the contents thereof only, (a) with the permission of the holder, to another trust

established for the benefit of asbestos personal injury claimants pursuant to section 524(g) of the Bankruptcy Code or other applicable law, (b) to such other persons as authorized by the holder, (c) in response to a valid subpoena of such materials, or (d) in response to an order issued by the Bankruptcy Court, upon application of a party with the requisite standing, directing the Asbestos Trust to provide such materials. Furthermore, the Asbestos Trust shall provide counsel for the holder a copy of any such subpoena or application to the Bankruptcy Court immediately upon the Asbestos Trust's receipt of such subpoena or application; provided, however, that if a subpoena or application seeks records or information pertaining to more than fifty (50) claimants, the Asbestos Trust may instead first provide a copy of the subpoena or application to counsel for the TAC and the FCR and delay providing a copy of the subpoena or application to counsel for individual holders of Asbestos Claims until, in the Trustee's judgment, it appears likely

that information or records relating to the holders may have to be produced in response to the subpoena. or application. In such a case, the Asbestos Trust shall ensure that the notice that is provided to counsel for the holders allows such counsel sufficient time to object to the production. All rights of the Asbestos Trust to object to any such subpoena or application on any grounds are preserved. The Asbestos Trust shall on its own initiative or upon request of the claimant in question take all necessary and appropriate steps to preserve said privileges before the applicable court and before those courts having appellate jurisdiction related thereto. Notwithstanding anything in the foregoing to the contrary, with the consent of the TAC and the FCR, the Asbestos Trust may, in specific limited circumstances, disclose information, documents or other materials reasonably necessary in the Asbestos Trust's judgment to preserve, litigate, resolve, or settle coverage, or to comply with an applicable obligation under an insurance policy or settlement agreement within the Asbestos Insurance Assets; provided, however, that the Asbestos Trust shall take any and all steps reasonably feasible in its judgment to preserve the further confidentiality of such information, documents and materials, and prior to the disclosure of such information, documents or materials to a third party, the Asbestos Trust shall receive from such third party a written agreement of confidentiality that (a) ensures that the information, documents and materials provided by the Asbestos Trust shall be used solely by the receiving party for the purpose stated in the agreement and (b) prohibits any other use or further dissemination of the information, documents and materials by the third party except as set forth in the written agreement of confidentiality. The Trustee shall provide the U.S. Trustee with notice of the occurrence of any such disclosures. Nothing in this TDP, the Plan or the Trust Agreement expands, limits or impairs the obligation under applicable law of a claimant to respond fully to lawful discovery in any underlying civil

action regarding his or her submission of factual information to the Asbestos Trust for the purpose of obtaining compensation for asbestos-related injuries from the Asbestos Trust. Notwithstanding the above, any party seeking information pertaining to the claims being made to the Trust, or paid by the Trust, can do so in a court of competent jurisdiction or seek to do so in an application before the Bankruptcy Court.

**SECTION 7.**

**GENERAL GUIDELINES FOR LIQUIDATING AND PAYING CLAIMS**

**7.1 Showing Required.** To establish a valid Asbestos Claim, a claimant must meet the requirements set forth in this TDP.

**7.2 Costs Considered.** Notwithstanding any provisions of this TDP to the contrary, the Trustee shall always give appropriate consideration to the cost of investigating and uncovering invalid Asbestos Claims so that the payment of valid Asbestos Claims is not further impaired by such processes with respect to issues related to the validity of the medical evidence supporting an Asbestos Claim. The Trustee shall also have the latitude to make judgments regarding the amount of transaction costs to be expended by the Asbestos Trust so that valid Asbestos Claims are not unduly further impaired by the costs of additional investigation. Nothing herein shall prevent the Trustee, in appropriate circumstances, from contesting the validity of any claim against the Asbestos Trust whatever the costs, or declining to accept medical evidence from sources that the Trustee has determined to be unreliable pursuant to the Claims Audit Program described in Section 5.7 above or otherwise.

**7.3 Discretion to Vary the Order and Amounts of Payments in Event of Limited Liquidity.** Consistent with the provisions hereof and subject to the FIFO Processing and Payment Queues and the Maximum Annual Payment, Maximum Available Payment and Claims Payment

Ratio requirements set forth above, the Trustee shall proceed as quickly as possible to liquidate valid Asbestos Claims, and shall make payments to holders of such claims in accordance with this TDP promptly as funds become available and as claims are liquidated, while maintaining sufficient resources to pay future valid claims in substantially the same manner.

Because the Asbestos Trust's income over time remains uncertain, and decisions about payments must be based on estimates that cannot be done precisely, they may have to be revised in light of experiences over time, and there can be no guarantee of any specific level of payment to claimants. However, the Trustee shall use his or her best efforts to treat similar claims in substantially the same manner, consistent with his or her duties as Trustee, the purposes of the Asbestos Trust, and the practical limitations imposed by the inability to predict the future with precision.

In the event that the Asbestos Trust faces temporary periods of limited liquidity, the Trustee may, with the consent of the TAC and the FCR, (a) suspend the normal order of payment, (b) temporarily limit or suspend payments altogether, (c) offer a Reduced Payment Option as described in Section 2.5 above and/or (d) commence making payments on an installment basis. The Trustee shall provide notice to the U.S. Trustee of any actions taken pursuant to the preceding Sentence.

**7.4 Punitive Damages.** Except as provided below for claims asserted under the Alabama Wrongful Death Statute, in determining the value of any liquidated or unliquidated Asbestos Claim, punitive or exemplary damages, *i.e.*, damages other than compensatory damages, shall not be considered or paid, notwithstanding their availability in the tort system. Similarly, no punitive or exemplary damages shall be payable with respect to any claim litigated against the Asbestos Trust in the tort system pursuant to Sections 5.9 above and 7.6 below. The only damages that may be awarded pursuant to this TDP to Alabama claimants who are deceased and whose personal representatives pursue their claims only under the Alabama Wrongful Death Statute shall

be compensatory damages determined pursuant to the statutory and common law of the Commonwealth of Pennsylvania, without regard to the choice of law principles.

**7.5 Sequencing Adjustment.**

**7.5(a) In General.** Subject to the limitations set forth below, a sequencing adjustment shall be paid on all Asbestos Claims with respect to which the claimant has had to wait a year or more for payment, provided, however, that no claimant shall receive a sequencing adjustment for a period in excess of seven (7) years, or for a period when the claim was deferred at the claimant's request. The sequencing adjustment factor shall be the one-year U.S. Treasury bill interest rate in effect on January 1 of the year in which the accrual of the sequencing adjustment commences. The rate of the sequencing adjustment shall be adjusted each January 1 to correspond to the one-year Treasury bill interest rate then in effect. The applicable sequencing adjustment shall be calculated based only on the value of the claim specified in Section 7.5(b) or (c) below, subject to the Payment Percentage; any accrued but unpaid sequencing adjustment shall not be included in such calculation.

**7.5(b) Unliquidated Asbestos Claims.** A sequencing adjustment shall be payable on the Scheduled Value of any unliquidated Asbestos Claim, whether the claim is liquidated under Expedited Review or by arbitration. No sequencing adjustment shall be paid on any claim liquidated in the tort system pursuant to Section 5.9 above and Section 7.6 below. Sequencing adjustments on all such unliquidated claims shall be measured from the date of payment back to the earliest of the date that is one year after the date on which (a) the claim was filed against a Debtor prior to the Petition Date; (b) the claim was filed against another defendant in the tort system onor after the Petition Date but before the Effective Date; (c) the claim was filed with the

Bankruptcy Court during the pendency of the Chapter 11 proceeding; or (d) the claim was filed with the Asbestos Trust after the Effective Date.

**7.5(c) Liquidated Pre-Petition Claims.** A sequencing adjustment shall also be payable on the liquidated value of all Pre-Petition Liquidated Claims described in Section 5.2(a) above. In the case of Pre-Petition Liquidated Claims liquidated by verdict or judgment, the sequencing adjustment shall be measured from the date of payment back to the date that is one (1) year after the date that the verdict or judgment was entered; provided, however, that in no event shall the sequencing adjustment be measured from a date prior to the Petition Date if the liquidated value of the Pre-Petition Liquidated Claim includes pre-petition interest. In the case of Pre-Petition Liquidated Claims liquidated by a binding, judicially enforceable settlement, the sequencing adjustment shall be measured from the date of payment back to the date that is one (1) year after the Petition Date.

**7.6 Suits in the Tort System.** If the holder of a disputed claim disagrees with the Asbestos Trust's determination regarding the Disease Level of the claim or the claimant's exposure history, and if the holder has first submitted the claim to non-binding arbitration as provided in Section 5.8 above, the holder may file a lawsuit against the Asbestos Trust in the Claimant's Jurisdiction as defined in Section 8.3 below. Any such lawsuit must be filed by the claimant in his or her own right and name and not as a member or representative of a class, and no such lawsuit may be consolidated with any other lawsuit. All defenses (including, with respect to the Asbestos Trust, all defenses which could have been asserted by a Debtor) shall be available to both sides at trial; however, the Asbestos Trust may waive any defense and/or concede any issue of fact or law. If the claimant was alive at the time the initial pre-petition complaint was filed or on the date the proof of claim form was filed with the Asbestos Trust, the case shall be treated as a personal injury

case with all personal injury damages to be considered even if the claimant has died during the pendency of the claim.

**7.7 Payment of Judgments for Money Damages.** If and when a claimant obtains a judgment in the tort system, the claim shall be placed in the FIFO Payment Queue based on the date on which the judgment became final. Thereafter, the claimant shall receive from the Asbestos Trust an initial payment (subject to the applicable Payment Percentage and the Maximum Annual Payment, Maximum Available Payment and Claims Payment Ratio provisions set forth above) of an amount equal to the greater of (i) the Asbestos Trust's last offer to the claimant or (ii) the award that the claimant declined in non-binding arbitration; provided, however, that in no event shall such payment amount exceed the amount of the judgment obtained in the tort system. The claimant shall receive the balance of the judgment, if any, in five (5) equal installments in years six (6) through ten (10) following the year of the initial payment (also subject to the applicable Payment Percentage and the Maximum Annual Payment, Maximum Available Payment and Claims Payment Ratio provisions above in effect on the date of the payment of the subject installment).

The total amounts paid with respect to such claims shall not exceed the relevant Scheduled Values for such Disease Levels as set forth in Section 5.3(a)(3) above. Under no circumstances shall (a) a sequencing adjustment be paid pursuant to Section 7.5 or (b) interest be paid under any statute on any judgments obtained in the tort system.

**7.8 Releases.** As a condition to making a payment to a claimant, the Asbestos Trust shall obtain from such claimant a Release in the form attached hereto as Exhibit 1. The Trustee may modify the provisions of the Release so long as he or she obtains the consent of the TAC and the FCR. The Trustee shall provide notice to the U.S. Trustee of any modifications to the Release and, upon request, a copy of the modifications.

If allowed by state law, the endorsing of a check or draft for payment by or on behalf of a claimant may, in the discretion of the Asbestos Trust, constitute such a release.

**7.9 Third-Party Services.** Nothing in this TDP shall preclude the Asbestos Trust from contracting with another asbestos claims resolution organization to provide services to the Asbestos Trust so long as decisions about the categorization and liquidated value of Asbestos Claims are based on the relevant provisions of this TDP, including the Disease Levels, Scheduled Values, and Medical/Exposure Criteria set forth above.

## SECTION 8.

## MISCELLANEOUS

**8.1 Amendments.** Except as otherwise provided herein, the Trustee may amend, modify, delete, or add to any provisions of this TDP (including, without limitation, amendments to conform this TDP to advances in scientific or medical knowledge or other changes in circumstances), provided he or she first obtains the consent of the TAC and the FCR pursuant to the Consent Process set forth in Sections 5.7(b) and 6.6(b) of the Trust Agreement, except that the right to amend the Claims Payment Ratio is governed by the provisions of Section 2.5 above, and the right to adjust the Payment Percentage is governed by Section 4.2 above. Nothing herein is intended to preclude the TAC or the FCR from proposing to the Trustee, in writing, amendments to this TDP. Any amendment proposed by the TAC or the FCR shall remain subject to Section 7.3 of the Trust Agreement. The Trustee shall provide notice to the U.S. Trustee of any amendments to this TDP and, upon request, a copy of the amendments.

**8.2 Severability.** Should any provision contained in this TDP be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this TDP. Should any provision contained in this TDP be

determined to be inconsistent with or contrary to the Debtors' obligations to any insurance company providing insurance coverage to a Debtor in respect of claims for personal injury based on exposure to an asbestos-containing product or to conduct for which a Debtor has legal responsibility, the Asbestos Trust with the consent of the TAC and the FCR may amend this TDP and/or the Trust Agreement to make the provisions of either or both documents consistent with the duties and obligations of the Debtors to said insurance company. The Trustee shall provide notice to the U.S. Trustee of any amendments to this TDP and to the Trust Agreement and, upon request, a copy of the amendments.

**8.3 Governing Law.** Except for purposes of determining the liquidated value of any Asbestos Claim, administration of this TDP shall be governed by, and construed in accordance with, the laws of the State of Delaware. The law governing the liquidation of Asbestos Claims in the case of arbitration or litigation in the tort system shall be the law of the Claimant's Jurisdiction as described below.

For these purposes, the "Claimant's Jurisdiction" is the jurisdiction in which the claim was filed (if at all) against a Debtor in the tort system prior to the Petition Date. If the claim was not filed against a Debtor in the tort system prior to the Petition Date, the claimant may elect as the Claimant's Jurisdiction either (i) the jurisdiction in which the claimant resides at the time of diagnosis or when the claim is filed with the Asbestos Trust; or (ii) a jurisdiction in which the claimant experienced exposure to an asbestos-containing product or to conduct for which a Debtor has legal responsibility.

**Exhibit 1**

Duro Dyne Asbestos Personal Injury Trust Release and Indemnity Agreement

**[TO BE PROVIDED SUBSEQUENT TO CONFIRMATION]**