# Exhibit 4

## Asbestos Trust Agreement

(The Asbestos Trust Agreement is Exhibit A to the Plan)

# DURO DYNE ASBESTOS PERSONAL INJURY TRUST AGREEMENT

**DURO DYNE ASBESTOS PERSONAL INJURY TRUST AGREEMENT**

**TABLE OF CONTENTS**

SECTION I – Agreement of Trust ........ 3
1.1 Creation and Name ........ 3
1.2 Purpose ........ 3
1.3 Transfer of Assets ........ 4
1.4 Acceptance of Assets and Assumption of Liabilities ........ 4

SECTION II – Powers and Trust Administration ........ 5
2.1 Powers ........ 5
2.2 General Administration ........ 9
2.3 Claims Administration ........ 13

SECTION III – Accounts, Investments, and Payments ........ 13
3.1 Accounts ........ 13
3.2 Investments ........ 14
3.3 Source of Payments ........ 16

SECTION IV – Trustee; Delaware Trustee ........ 17
4.1 Number ........ 17
4.2 Term of Service ........ 17
4.3 Appointment of Successor Trustee ........ 18
4.4 Liability of Trustee, Members of the TAC and the FCR ........ 19
4.5 Compensation and Expenses of Trustee and Delaware Trustee ........ 19
4.6 Indemnification ........ 20
4.7 Lien ........ 21
4.8 Trustee’s Employment of Experts; Delaware Trustee’s Employment of Counsel ........ 21
4.9 Trustee’s Independence ........ 22
4.10 Bond ........ 22
4.11 Delaware Trustee ........ 22

4.12 Medicare Reporting Obligations ........ 24

SECTION V – Trust Advisory Committee ........ 25

5.1 Members ........ 25

5.2 Duties ........ 25

5.3 Term of Office ........ 26

5.4 Appointment of Successor ........ 26

5.5 TAC’s Employment of Professionals ........ 27

5.6 Compensation and Expenses of the TAC ........ 29

5.7 Procedures for Consultation With and Obtaining the Consent of the TAC ........ 29

SECTION VI – The FCR ........ 31

6.1 Duties ........ 31

6.2 Term of Office ........ 32

6.3 Appointment of Successor ........ 33

6.4 FCR’s Employment of Professionals ........ 33

6.5 Compensation and Expenses of the FCR ........ 34

6.6 Procedures for Consultation with and Obtaining the Consent of the FCR ........ 35

SECTION VII – General Provisions ........ 37

7.1 Irrevocability ........ 37

7.2 Term; Termination ........ 37

7.3 Amendments ........ 39

7.4 Meetings ........ 39

7.5 Severability ........ 40

7.6 Notices ........ 40

7.7 Successors and Assigns ........ 42

7.8 Limitation on Claim Interests for Securities Laws Purposes ........ 43

7.9 Entire Agreement; No Waiver ........ 43

7.10 Headings ........ 43

7.11 Governing Law ........ 43

7.12 Settlors’ Representative and Cooperation ........ 44

7.13 Dispute Resolution ........ 45

7.14 Enforcement and Administration ........ 45

7.15 Effectiveness .......... 46
7.16 Counterpart Signatures .......... 46

# DURO DYNE ASBESTOS PERSONAL INJURY TRUST AGREEMENT

This Duro Dyne Asbestos Personal Injury Trust Agreement (this "**Trust Agreement**"), dated the date set forth on the signature page hereof and effective as of the Effective Date, is entered into, pursuant to the Third Amended Prenegotiated Plan of Reorganization for Duro Dyne National Corp, et al., under Chapter 11 of the Bankruptcy Code, as Modified, dated June 6, 2019 (as it may be further amended or modified, the "**Plan**"),[1] by Duro Dyne National Corp. and the other Debtors (collectively referred to as the "**Debtors**," "**Duro Dyne**," or the "**Settlors**"), the debtors and debtors-in-possession whose chapter 11 case is administered under Case No. 18-27963 (MBK) in the United States Bankruptcy Court for the District of New Jersey; the Legal Representative (the "**FCR**"); the Asbestos Claimants Committee (the "**ACC**"); Wilmington Trust, National Association (the "**Delaware Trustee**"); the Asbestos Trustee identified on the signature pages hereof (the "**Trustee**"); and the members of the Trust Advisory Committee identified on the signature pages hereof (the "**TAC**"); and

**WHEREAS**, the Debtors have reorganized under the provisions of chapter 11 of the Bankruptcy Code in the case filed in the United States Bankruptcy Court for the District of New Jersey, administered and known as *In re Duro Dyne National Corp, et al.*, Case No. 18-27963 (MBK); and

---

[1] All capitalized terms not otherwise defined herein shall have their respective meanings as set forth in the Plan, and such definitions are incorporated herein by reference. All capitalized terms not defined herein or defined in the Plan, but defined in the Bankruptcy Code or Rules, shall have the meanings ascribed to them by the Bankruptcy Code and Rules, and such definitions are incorporated herein by reference.

**WHEREAS**, the Confirmation Order has been entered by the Bankruptcy Court and affirmed by the District Court; and

**WHEREAS**, the Plan provides, *inter alia*, for the creation of the Duro Dyne Asbestos Personal Injury Trust (the "**Asbestos Trust**"); and

**WHEREAS**, pursuant to the Plan, the Asbestos Trust is to use its assets and income to satisfy all Channeled Asbestos Claims ("**Asbestos Claims**"); and

**WHEREAS**, it is the intent of Duro Dyne, the Trustee, the ACC, the TAC, and the FCR that the Asbestos Trust be administered, maintained, and operated at all times through mechanisms that provide reasonable assurance that the Asbestos Trust will satisfy all Asbestos Claims pursuant to the Duro Dyne Asbestos Trust Distribution Procedures (the "**TDP**") attached to the Plan Supplement dated _______ __, 2019 as Exhibit__in substantially the same manner, and in strict compliance with the terms of this Trust Agreement; and

**WHEREAS**, all rights of the holders of Asbestos Claims arising under this Trust Agreement and the TDP shall vest upon the Effective Date; and

**WHEREAS**, pursuant to the Plan, the Asbestos Trust is intended to qualify as a "qualified settlement fund" within the meaning of section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under section 468B of the Internal Revenue Code (the "**QSF Regulations**"); and

**WHEREAS**, the Bankruptcy Court has determined that the Asbestos Trust and the Plan satisfy all the prerequisites for an injunction pursuant to section 524(g) of the Bankruptcy Code with respect to any and all Asbestos Claims, and such injunction has been entered in connection with the Confirmation Order;

**NOW, THEREFORE**, it is hereby agreed as follows:

## SECTION I

## AGREEMENT OF TRUST

**1.1 Creation and Name.** The Debtors as Settlors hereby create a trust known as the "Duro Dyne Asbestos Personal Injury Trust," which is the Asbestos Trust provided for and referred to in the Plan. The Trustee of the Asbestos Trust may transact the business and affairs of the Asbestos Trust in the name of the Asbestos Trust, and references herein to the Asbestos Trust shall include the Trustee acting on behalf of the Asbestos Trust. It is the intention of the parties hereto that the trust created hereby constitute a statutory trust under Chapter 38 of title 12 of the Delaware Code, 12 Del. C. § 3801 et seq. (the "**Act**") and that this document constitutes the governing instrument of the Asbestos Trust. The Trustee and the Delaware Trustee are hereby authorized and directed to execute and file a Certificate of Trust with the Delaware Secretary of State in the form attached hereto.

**1.2 Purpose.** The purpose of the Asbestos Trust is to assume all liabilities and responsibility for all Asbestos Claims, and, among other things to: (a) direct the processing, liquidation and payment of all Asbestos Claims in accordance with the Plan, the TDP, and the Confirmation Order; (b) preserve, hold, manage, and maximize the assets of the Asbestos Trust for use in paying and satisfying Asbestos Claims; and (c) qualify at all times as a qualified settlement fund. The Asbestos Trust is to use the Asbestos Trust's assets and income to pay the holders of all Asbestos Claims in accordance with this Trust Agreement and the TDP in such a way that such holders of Asbestos Claims are treated fairly, equitably, and reasonably in light of the finite assets available to satisfy such claims, and to otherwise comply in all respects with the requirements of a trust set forth in section 524(g)(2)(B) of the Bankruptcy Code.

**1.3** **Transfer of Assets.** Pursuant to, and in accordance with, Sections 4.08 and 4.10 of the Plan, the Asbestos Trust has received the Asbestos Trust Assets to fund the Asbestos Trust and settle or discharge all Asbestos Claims. In all events, the Asbestos Trust Assets or any other assets to be transferred to the Asbestos Trust under the Plan will be transferred to the Asbestos Trust free and clear of any liens or other claims by the Debtors, the Reorganized Debtor, the other Protected Parties, any creditor, or other entity except as otherwise provided in the Plan. Sections 5.02 and 13.12 of the Plan provide for the Debtors and the Reorganized Debtor, among others, to execute and deliver such documents to the Asbestos Trust as the Trustee may request to effectuate the transfer and assignment of any Asbestos Trust Assets to the Asbestos Trust.

**1.4** **Acceptance of Assets and Assumption of Liabilities.**

(a) In furtherance of the purposes of the Asbestos Trust, the Asbestos Trust hereby expressly accepts the transfer to the Asbestos Trust of the Asbestos Trust Assets or any other transfers contemplated by the Plan in the time and manner as, and subject to the terms, contemplated in the Plan.

(b) In furtherance of the purposes of the Asbestos Trust, the Asbestos Trust expressly assumes all liabilities and responsibility for all Asbestos Claims in substitution for the financial or other responsibility or liability of the Reorganized Debtor therefor. Except as otherwise provided in this Trust Agreement and the TDP, the Asbestos Trust shall have all defenses, cross-claims, offsets, and recoupments, as well as rights of indemnification, contribution, subrogation, and similar rights, regarding such claims that the Debtors or the Reorganized Debtor have or would have had under applicable law. Regardless of the foregoing, however, a claimant must meet otherwise applicable federal and state statutes of limitations and repose, except as otherwise provided in Section 5.1(a)(2) of the TDP.

(c) Notwithstanding anything to the contrary herein, no provision herein or in the TDP shall be construed or implemented in a manner that would cause the Asbestos Trust to fail to qualify as a "qualified settlement fund" under the QSF Regulations.

(d) Nothing in this Trust Agreement shall be construed in any way to limit (i) the scope, enforceability, or effectiveness of the Injunctions, or (ii) subject to the provisions of Section 1.4(b) above, the Asbestos Trust's assumption of all liability for Asbestos Claims.

(e) In this Trust Agreement and the TDP the words "must," "will," and "shall" are intended to have the same mandatory force and effect, while the word "may" is intended to be permissive rather than mandatory.

(f) To the extent required by the Act, the beneficial owners (within the meaning of the Act) of the Asbestos Trust (the "**Beneficial Owners**") shall be deemed to be the holders of Asbestos Claims; provided that (i) the holders of Asbestos Claims, as such Beneficial Owners, shall have only such rights with respect to the Asbestos Trust and its assets as are set forth in the TDP, and (ii) no greater or other rights, including upon dissolution, liquidation or winding up of the Asbestos Trust, shall be deemed to apply to the holders of Asbestos Claims in their capacity as Beneficial Owners.

## SECTION II

## POWERS AND TRUST ADMINISTRATION

**2.1 Powers.**

(a) The Trustee is and shall act as the fiduciary to the Asbestos Trust in accordance with the provisions of this Trust Agreement and the Plan. The Trustee shall, at all times, administer the Asbestos Trust and the Asbestos Trust Assets in accordance with the purposes set forth in Section 1.2 above. Subject to the limitations set forth in this Trust

Agreement, the Trustee shall have the power to take any and all actions that, in the judgment of the Trustee, are necessary or proper to fulfill the purposes of the Asbestos Trust, including, without limitation, each power expressly granted in this Section 2.1, any power reasonably incidental thereto and not inconsistent with the requirements of Section 2.2, and any trust power now or hereafter permitted under the laws of the State of Delaware.

(b) Except as required by applicable law or otherwise specified herein, the Trustee need not obtain the order or approval of any court in the exercise of any power or discretion conferred hereunder.

(c) Without limiting the generality of Section 2.1(a) above, and except as limited below, the Trustee shall have the power to:

(i) receive and hold the Asbestos Trust Assets and exercise all rights with respect thereto, including the right to vote and sell any securities that are included in the Asbestos Trust Assets;

(ii) invest the monies held from time to time by the Asbestos Trust;

(iii) sell, transfer, or exchange any or all of the Asbestos Trust Assets at such prices and upon such terms as the Trustee may consider proper, consistent with the other terms of this Trust Agreement;

(iv) enter into leasing and financing agreements with third parties to the extent such agreements are reasonably necessary to permit the Asbestos Trust to operate;

(v) pay liabilities and expenses of the Asbestos Trust;

(vi) establish such funds, reserves, and accounts within the Asbestos Trust estate, as deemed by the Trustee to be useful in carrying out the purposes of the Asbestos Trust;

(vii) sue and be sued and participate, as a party or otherwise, in any judicial, administrative, arbitrative, or other proceeding;

(viii) establish, supervise, and administer the Asbestos Trust in accordance with this Trust Agreement and the TDP and the terms thereof;

(ix) appoint such officers and hire such employees and engage such legal, financial, accounting, investment, auditing, and forecasting, and other consultants and agents as the business of the Asbestos Trust requires, and delegate to such persons such powers and authorities as the fiduciary duties of the Trustee permit and as the Trustee, in his or her discretion, deems advisable or necessary in order to carry out the terms of this Asbestos Trust;

(x) pay employees, legal, financial, accounting, investment, auditing, and forecasting, and other consultants, advisors, and agents, including those engaged by the Asbestos Trust in connection with its alternative dispute resolution activities, reasonable compensation;

(xi) compensate the Trustee, the Delaware Trustee, the TAC members, and the FCR as provided below, and their employees, legal, financial, accounting, investment, and other advisors, consultants, independent contractors, and agents, and reimburse the Trustee, the Delaware Trustee, the TAC members, and the FCR all reasonable out-of-pocket costs and expenses incurred by such persons in connection with the performance of their duties hereunder;

(xii) execute and deliver such instruments as the Trustee considers proper in administering the Asbestos Trust;

(xiii) enter into such other arrangements with third parties as are deemed by the Trustee to be useful in carrying out the purposes of the Asbestos Trust, provided such arrangements do not conflict with any other provision of this Trust Agreement;

(xiv) in accordance with Section 4.6 below, defend, indemnify, and hold harmless (and purchase insurance indemnifying) (A) the Trustee, the Delaware Trustee, the members of the TAC, and the FCR, and (B) the officers and employees of the Asbestos Trust, and any agents, advisors and consultants of the Asbestos Trust, the TAC, or the FCR (the "**Additional Indemnitees**"), to the fullest extent that a statutory trust organized under the laws of the State of Delaware is from time to time entitled to indemnify and/or insure its directors, trustees, officers, employees, agents, advisors, and representatives;

(xv) delegate any or all of the authority herein conferred with respect to the investment of all or any portion of the Asbestos Trust Assets to any one or more reputable individuals or recognized institutional investment advisors or investment managers without liability for any action taken or omission made because of any such delegation, except as provided in Section 4.4 below;

(xvi) consult with the TAC and the FCR at such times and with respect to such issues relating to the conduct of the Asbestos Trust as the Trustee considers desirable and provide notice to the United States Trustee for Region 3 or his or her designee (the "**U.S. Trustee**") of such consultations and to the extent practicable; and

(xvii) make, pursue (by litigation or otherwise), collect, compromise or settle, in the name of the Asbestos Trust, any claim, right, action, or cause of action included in the Asbestos Trust Assets, including, but not limited to, insurance recoveries, before any court of competent jurisdiction.

(d) The Trustee shall not have the power to guarantee any debt of other persons.

(e) The Trustee agrees to take the actions of the Asbestos Trust required hereunder.

(f) The Trustee shall give the TAC and the FCR prompt notice of any act performed or taken pursuant to Sections 2.1(c)(i), (iii), (vii), or (xv) above, and any act proposed to be performed or taken pursuant to Section 2.2(f) below. The Trustee shall also provide notice of such acts to the U.S. Trustee.

**2.2 General Administration.**

(a) The Trustee shall act in accordance with this Trust Agreement.

(b) The Trustee shall (i) timely file such income tax and other returns and statements required to be filed and shall timely pay all taxes required to be paid by the Asbestos Trust, (ii) comply with all applicable reporting and withholding obligations, (iii) satisfy all requirements necessary to qualify and maintain qualification of the Asbestos Trust as a qualified settlement fund within the meaning of the QSF Regulations, and (iv) take no action that could cause the Asbestos Trust to fail to qualify as a qualified settlement fund within the meaning of the QSF Regulations.

(c) The Trustee shall timely account to the Bankruptcy Court as follows:

(i) The Trustee shall cause to be prepared and filed with the Bankruptcy Court, as soon as available, and in any event within one hundred and twenty (120) days following the end of each fiscal year, an annual report (the "**Annual Report**") containing financial statements of the Asbestos Trust (including, without limitation, a balance sheet of the Asbestos Trust as of the end of such fiscal year and a statement of operations for such fiscal year) audited by a firm of independent certified public accountants selected by the Trustee and accompanied by an opinion of such firm as to the fairness of the financial statements'

presentation of the cash and investments available for the payment of claims. The Trustee shall provide a copy of such Annual Report to the TAC and the FCR when such reports are filed with the Bankruptcy Court. The Trustee shall provide notice to the U.S. Trustee of the filing of the Annual Report.

(ii) Simultaneously with the filing of the Annual Report, the Trustee shall cause to be prepared and filed with the Bankruptcy Court a report containing a summary regarding the number and type of claims disposed of during the period covered by the financial statements. The Trustee shall provide a copy of such report to the TAC and the FCR when such report is filed. The Trustee shall provide notice to the U.S. Trustee of the filing of the report.

(iii) All materials required to be filed with the Bankruptcy Court by this Section 2.2(c) shall be available for inspection by the public in accordance with procedures established by the Bankruptcy Court and shall be provided to the U.S. Trustee Office of the United States Trustee for the District of New Jersey (the "**U.S. Trustee**").

(d) The Trustee shall cause to be prepared as soon as practicable prior to the commencement of each fiscal year a budget and cash flow projections covering such fiscal year. The budget and cash flow projections shall include a determination of the Maximum Annual Payment pursuant to Section 2.4 of the TDP. The Trustee shall provide a copy of the budget and cash flow projections to the TAC, U.S. Trustee and the FCR. The Trustee shall provide notice of the provision of such documents to the U.S. Trustee.

(e) The Trustee shall consult with the TAC and the FCR (i) on the general implementation and administration of the Asbestos Trust; (ii) on the general implementation and administration of the TDP; and (iii) on such other matters as may be required under this Trust

Agreement and the TDP. The Trustee shall provide notice of the occurrence of such Consultations and, to the extent practicable, the issues under discussion to the U.S. Trustee.

(f) The Trustee shall be required to obtain the consent of the TAC and the FCR pursuant to the Consent Process set forth in Section 5.7(b) and 6.6(b) below, in addition to any other instances elsewhere enumerated, in order to take the actions listed in (i) – (xiii) below. The Trustee shall provide notice within ten (10) days to the U.S. Trustee of the provision of such consents.

(i) to determine, establish, or change the Payment Percentage described in Section 2.3 of the TDP as provided in Section 4.2 of the TDP;

(ii) to change the Claims Payment Ratio described in Section 2.5 of the TDP;

(iii) to change the Disease Levels, Scheduled Values and/or Medical/Exposure Criteria set forth in Section 5.3(a)(3) of the TDP;

(iv) to establish and/or to change the Claims Materials to be provided to holders of Asbestos Claims under Section 6.1 of the TDP;

(v) to require that claimants provide additional kinds of medical evidence pursuant to Section 6.1 of the TDP;

(vi) to change the form of release to be provided pursuant to Section 7.8 of the TDP;

(vii) to terminate the Asbestos Trust pursuant to Section 7.2 below;

(viii) to settle the liability of any insurer under any insurance policy or legal action related thereto;

(ix) to change the compensation of the members of the TAC, the FCR, the Delaware Trustee or the Trustee, other than to reflect cost-of-living increases or to reflect changes approved by the Bankruptcy Court as otherwise provided herein;

(x) to take actions to minimize any tax on the Asbestos Trust Assets; provided that no such action prevents the Asbestos Trust from qualifying as a qualified settlement fund within the meaning of the QSF Regulations or requires an election for the Asbestos Trust to be treated as a grantor trust for tax purposes;

(xi) to amend any provision of this Trust Agreement or the TDP in accordance with the terms thereof;

(xii) to acquire an interest in or to merge any claims resolution organization formed by the Asbestos Trust with another claims resolution organization that is not specifically created by this Trust Agreement or the TDP, or to contract with another claims resolution organization or other entity that is not specifically created by this Trust Agreement or the TDP, or permit any other party to join in any claims resolution organization that is formed by the Asbestos Trust pursuant to the Trust Agreement or the TDP; provided that such merger, acquisition, contract or joinder shall not (a) subject the Reorganized Debtor or any successors in interest thereto, to any risk of having any Asbestos Claim asserted against it or them, or (b) otherwise jeopardize the validity or enforceability of the Injunctions or any other injunction or release issued or granted in connection with the Plan; and provided further that the terms of such merger will require the surviving organization to make decisions about the allowability and value of claims in accordance with Section 2.1 of the TDP which requires that such decisions be based on the provisions of the TDP, or (c) cause the Asbestos Trust to fail to qualify as a "qualified settlement fund" under the QSF Regulations; or

(xiii) if and to the extent required by Section 6.5 of the TDP, to disclose any information, documents, or other materials to preserve, litigate, resolve, or settle coverage, or to comply with an applicable obligation under an insurance policy or settlement agreement pursuant to Section 6.5 of the TDP.

(g) The Trustee shall meet with the TAC and the FCR no less often than quarterly. The Trustee shall meet in the interim with the TAC and the FCR when so requested by either. Meetings may be held in person, by telephone conference call, or by a combination of the two.

(h) The Trustee, upon notice from either the TAC or the FCR, if practicable in view of pending business, shall at his or her next meeting with the TAC or the FCR consider issues submitted by the TAC or the FCR and shall provide notice to the U.S. Trustee of the occurrence of such considerations and, to the extent practicable, the issues submitted. The Trustee shall keep the TAC and the FCR reasonably informed regarding all aspects of the administration of the Asbestos Trust.

**2.3 Claims Administration.** The Trustee shall promptly proceed to implement the TDP.

## SECTION III

## ACCOUNTS, INVESTMENTS, AND PAYMENTS

**3.1 Accounts.**

(a) The Trustee may, from time to time, create such accounts and reserves within the Asbestos Trust estate as he or she may deem necessary, prudent, or useful in order to provide for the payment of expenses and payment of Asbestos Claims and may, with respect to any such account or reserve, restrict the use of monies therein, and the earnings or accretions

thereto.

(b) The Trustee shall include a reasonably detailed description of the creation of any account or reserve in accordance with this Section 3.1 and, with respect to any such account, the transfers made to such account, the proceeds of or earnings on the assets held in each such account and the payments from each such account in the accounts to be filed with the Bankruptcy Court and provided to the TAC and the FCR pursuant to Section 2.2(c)(i) above.

**3.2** **Investments.** Investment of monies held in the Asbestos Trust shall be administered in the manner consistent with the standards set forth in the Uniform Prudent Investor Act, subject to the following limitations and provisions:

(a) The Asbestos Trust may invest only in diversified equity portfolios whose benchmark is a broad equity market index such as, but not limited to, the S&P 500 Index, Russell 1000 Index, S&P ADR Index or MSCI EAFE Index. The Asbestos Trust shall not acquire, directly or indirectly, equity in any entity (other than the Reorganized Debtor or any successor to the Reorganized Debtor) or business enterprise if, immediately following such acquisition, the Asbestos Trust would hold more than 5% of the equity in such entity or business enterprise. The Asbestos Trust shall not hold, directly or indirectly, more than 5% of the equity in any entity (other than the Reorganized Debtor, or any successor to the Reorganized Debtor) or business enterprise.

(b) The Asbestos Trust shall not acquire or hold any long-term debt securities unless (i) such securities are Asbestos Trust Assets under the Plan, (ii) such securities are rated "Baa" or higher by Moody's, "BBB" or higher by Standard & Poor's ("**S&P**"), or have been given an equivalent investment grade rating by another nationally recognized statistical rating agency, or (iii) have been issued or fully guaranteed as to principal and interest by the United States of America or any agency or instrumentality thereof. This restriction does not applyto

any pooled investment vehicles where pooled assets receive an investment grade rating (i.e., "BBB" rating or above) by a nationally recognized rating agency.

(c) The Asbestos Trust shall not acquire or hold for longer than ninety (90) days any commercial paper unless such commercial paper is rated "Prime-1" or higher by Moody's or "A-1" or higher by S&P, or has been given an equivalent rating by another nationally recognized statistical rating agency.

(d) The Asbestos Trust shall not acquire any debt securities or other debt instruments issued by any entity if, following such acquisition, the aggregate market value of all such debt securities and/or other debt instruments issued by such entity held by the Asbestos Trust would exceed 5% of the then current aggregate value of the Asbestos Trust's assets. There is no limitation on holding debt securities or other debt instruments issued or fully guaranteed as to principal and interest by the United States of America or any agency or instrumentality thereof.

(e) The Asbestos Trust shall not acquire or hold any certificates of deposit in an amount exceeding any federal insurance on such certificates of deposit unless all publicly held, long-term debt securities, if any, of the financial institution issuing the certificate of deposit and the holding company, if any, of which such financial institution is a subsidiary, meet the standards set forth in Section 3.2(b) above.

(f) The Asbestos Trust may acquire and hold any securities or instruments issued by the Reorganized Debtor or any successor to the Reorganized Debtor or obtained as proceeds of litigation or otherwise to resolve disputes, without regard to the limitations set forth in Subsections (a)-(e) above.

(g) The Asbestos Trust shall not acquire or hold any repurchase obligations unless, in the opinion of the Trustee, they are adequately collateralized.

(h) The Asbestos Trust may allow its investment managers to acquire prudently or hold derivative instruments, including, without limitation, options, futures and swaps in the normal course of portfolio management. Specifically, the Asbestos Trust may acquire or hold derivatives to help manage or mitigate portfolio risk, including, without limitation, interest rate risk and equity market risk. Using derivative instruments to leverage a portfolio to enhance returns (at a much greater risk to the portfolio) is prohibited.

(i) The Asbestos Trust may lend securities on a short-term basis, subject to adequate, normal and customary collateral arrangements.

(j) Notwithstanding (a) above, the Asbestos Trust may acquire and hold an equity interest in a claims resolution organization without limitation as to the size of the equity interest acquired and held if prior to such acquisition, the Asbestos Trust complies with the provisions of Section 2.2(f)(xii) hereof with respect to the acquisition.

**3.3 Source of Payments.**

(a) All Asbestos Trust expenses and payments and all liabilities with respect to Asbestos Claims shall be payable solely by the Trustee out of the Asbestos Trust Assets. Neither the Trustee, the Delaware Trustee, the TAC or FCR, or any of their officers, agents, advisors, or employees, nor the Debtors, the Reorganized Debtor, or any other Protected Party shall be liable for the payment of any Asbestos Trust expense or any other liability of the Asbestos Trust, except to the extent provided in the Plan or Plan Documents.

(b) The Trustee shall include a reasonably detailed description of any payments made in accordance with this Section 3.3 in the Annual Report.

(c) The Trustee, with the consent of the TAC and the FCR, shall establish and implement billing guidelines applicable to the TAC, the FCR, the Trustee and their respective professionals that seek compensation from the Asbestos Trust. The Trustee shall provide notice to the U.S. Trustee of such implementation and, to the extent practicable, such guidelines.

## SECTION IV

## TRUSTEE; DELAWARE TRUSTEE

**4.1 Number.** In addition to the Delaware Trustee appointed pursuant to Section 4.11, there shall be one (1) Trustee who shall be that person named on the signature page hereof.

**4.2 Term of Service.**

(a) The initial Trustee named pursuant to Section 4.1 above shall serve an initial term of service of five (5) years. Thereafter each term of service shall be five (5) years. The initial Trustee shall serve from the Effective Date until the earliest of (i) the end of his or her term, (ii) his or her death, (iii) his or her mandatory retirement at the end of the year in which the Trustee reaches the age of 70 (unless, and for so long as, this mandatory retirement requirement is waived by the agreement of the TAC and the FCR), (iv) his or her resignation pursuant to Section 4.2(b) below, (v) his or her removal pursuant to Section 4.2(c) below, or (vi) the termination of the Asbestos Trust pursuant to Section 7.2 below.

(b) The Trustee may resign at any time by written notice to the TAC and the FCR. Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c) The Trustee may be removed at the recommendation of the TAC and the FCR with the approval of the Bankruptcy Court, in the event that he or she becomes unable to discharge his or her duties hereunder due to accident or physical or mental deterioration, or for

other good cause. Good cause shall be deemed to include, without limitation, any substantial failure to comply with the general administration provisions of Section 2.2 above, a consistent pattern of neglect and failure to perform or participate in performing the duties of the Trustee hereunder, or repeated non-attendance at scheduled meetings. Such removal shall require the approval of the Bankruptcy Court and shall take effect at such time as the Bankruptcy Court shall determine.

**4.3 Appointment of Successor Trustee.**

(a) In the event of a vacancy in the Trustee position, whether by term expiration, death, retirement, resignation, or removal, the vacancy shall be filled by the TAC and FCR. In the event that the TAC and the FCR cannot agree on the successor Trustee, the Bankruptcy Court shall make the appointment. Nothing in this Trust Agreement shall prevent the reappointment of an individual serving as the Trustee for an additional term or terms.

(b) Immediately upon the appointment of any successor Trustee, all rights, titles, duties, powers and authority of the predecessor Trustee hereunder shall be vested in, and undertaken by, the successor Trustee without any further act. No successor Trustee shall be liable personally for any act or omission of his or her predecessor Trustee. No successor Trustee shall have any duty to investigate the acts or omissions of his or her predecessor Trustee.

(c) Each successor Trustee shall serve until the earliest of (i) the expiration of his or her term, (ii) his or her death, (iii) his or her mandatory retirement at the end of the year in which the Trustee reaches the age of 70 (unless, and for so long as, this mandatory retirement requirement is waived by the agreement of the TAC and the FCR), (iv) his or her resignation pursuant to Section 4.2(b) above, (v) his or her removal pursuant to Section 4.2(c) above, or (vi) the termination of the Asbestos Trust pursuant to Section 7.2 below.

**4.4 Liability of Trustee, Members of the TAC and the FCR.** The Trustee, the Members of the TAC and the FCR shall not be liable to the Asbestos Trust, to any individual holding an asbestos claim, or to any other person, except for such individual's own breach of trust committed in bad faith or for willful misappropriation.

**4.5 Compensation and Expenses of Trustee and Delaware Trustee.**

(a) The Trustee shall receive a retainer from the Asbestos Trust for his or her service as a Trustee in the amount of $25,000 per annum, paid annually. Hourly time, as described below, shall first be billed and applied to the annual retainer. Hourly time in excess of the annual retainer shall be paid by the Asbestos Trust. For all time expended as Trustee, including attending meetings, preparing for such meetings, and working on authorized special projects, the Trustee shall receive the sum of $500 per hour. For all non-working travel time in connection with Asbestos Trust business, the Trustee shall receive the sum of $250 per hour. All time shall be computed on a decimal hour basis. The Trustee shall record all hourly time to be charged to the Asbestos Trust on a daily basis. The hourly compensation payable to the Trustee hereunder shall be reviewed every year by the Trustee and, after consultation with the members of the TAC and the FCR, appropriately adjusted by the Trustee for changes in the cost of living. The Delaware Trustee shall be paid such compensation as agreed to pursuant to a separate fee agreement.

(b) The Asbestos Trust will promptly reimburse the Trustee and the Delaware Trustee for all reasonable out-of-pocket costs and expenses incurred by the Trustee or the Delaware Trustee in connection with the performance of their duties hereunder.

(c) The Asbestos Trust shall include a description of the amounts paid under this Section 4.5 in the Annual Report.

**4.6 Indemnification.**

(a) The Asbestos Trust shall indemnify and defend the Trustee, the members of the TAC, the Delaware Trustee, and the FCR in the performance of their duties hereunder to the fullest extent that a statutory trust organized under the laws of the State of Delaware (after the application of Section 7.11) is from time to time entitled to indemnify and defend such persons against any and all liabilities, expenses, claims, damages, or losses incurred by them in the performance of their duties hereunder or in connection with activities undertaken by them prior to the Effective Date in connection with the formation, establishment, or funding of the Asbestos Trust. The Asbestos Trust may indemnify any of the Additional Indemnitees in the performance of their duties hereunder to the fullest extent that a statutory trust organized under the laws of the State of Delaware (after the application of Section 7.11) is from time to time entitled to indemnify and defend such persons against any and all liabilities, expenses, claims, damages, or losses incurred by them in the performance of their duties hereunder or in connection with activities undertaken by them prior to the Effective Date in connection with the formation, establishment or funding of the Asbestos Trust. Notwithstanding the foregoing, no individual shall be indemnified or defended in any way for any liability, expense, claim, damage, or loss for which he or she is ultimately liable under Section 4.4 above.

(b) Reasonable expenses, costs and fees (including attorneys' fees and costs) incurred by or on behalf of the Trustee, a member of the TAC, the Delaware Trustee, the FCR or an Additional Indemnitee in connection with any action, suit, or proceeding, whether civil, administrative or arbitrative, from which they are indemnified by the Asbestos Trust pursuant to Section 4.6(a) above, shall be paid by the Asbestos Trust in advance of the final disposition thereof upon receipt of an undertaking, by or on behalf of the Trustee, the member of the TAC,

the Delaware Trustee, the FCR or the Additional Indemnitee, to repay such amount in the event that it shall be determined ultimately by final order that the Trustee, the member of the TAC, the FCR or the Additional Indemnitee is not entitled to be indemnified by the Asbestos Trust.

(c) The Trustee must purchase and maintain reasonable amounts and types of insurance on behalf of an individual who is or was a Trustee, a member of the TAC, the FCR or an Additional Indemnitee, including against liability asserted against or incurred by such individual in that capacity or arising from his or her status as a Trustee, TAC member, FCR, an officer or an employee of the Asbestos Trust, or an advisor, consultant or agent of the Asbestos Trust, the TAC or the FCR.

**4.7 Lien.** The Trustee, members of the TAC, the FCR and the Additional Indemnitees shall have a first priority lien upon the Asbestos Trust Assets to secure the payment of any amounts payable to them pursuant to Section 4.6 above.

**4.8 Trustee's Employment of Experts; Delaware Trustee's Employment of Counsel.**

(a) The Trustee may, but shall not be required to, retain and/or consult with counsel, accountants, appraisers, auditors, forecasters, experts, financial and investment advisors and such other parties deemed by the Trustee to be qualified as experts on the matters submitted to them (the "**Trust Professionals**"), and in the absence of gross negligence, the written opinion of or information provided by any such party deemed by the Trustee to be an expert on the particular matter submitted to such party shall be full and complete authorization and protection in respect of any action taken or not taken by the Trustee hereunder in good faith and in accordance with the written opinion of or information provided by any such party.

(b) The Delaware Trustee shall be permitted to retain counsel only in such circumstances as required in the exercise of its obligations hereunder and compliance with the

advice of such counsel shall be full and complete authorization and protection for actions taken or not taken by the Delaware Trustee in good faith in compliance with such advice.

**4.9 Trustee's Independence.** The Trustee shall not, during the term of his or her service, hold a financial interest in, act as attorney or agent for, or serve as any other professional for the Reorganized Debtor. Notwithstanding the foregoing, the Trustee may serve, without any additional compensation other than the compensation to be paid by the Asbestos Trust pursuant to Section 4.5(a) above, as a director of the Reorganized Debtor. The Trustee shall not act as an attorney for any person who holds an asbestos claim. For the avoidance of doubt, this Section shall not be applicable to the Delaware Trustee.

**4.10 Bond.** The Trustee and the Delaware Trustee shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

**4.11 Delaware Trustee.**

(a) There shall at all times be a Delaware Trustee. The Delaware Trustee shall either be (i) a natural person who is at least 21 years of age and a resident of the State of Delaware or (ii) a legal entity that has its principal place of business in the State of Delaware, otherwise meets the requirements of applicable Delaware law and shall act through one or more persons authorized to bind such entity. If at any time the Delaware Trustee shall cease to be eligible in accordance with the provisions of this Section 4.11, it shall resign immediately in the manner and with the effect hereinafter specified in Section 4.11(c) below. For the avoidance of doubt, the Delaware Trustee will only have such rights and obligations as expressly provided by reference to the Delaware Trustee hereunder.

(b) The Delaware Trustee shall not be entitled to exercise any powers, nor shall the Delaware Trustee have any of the duties and responsibilities, of the Trustee set forth

herein. The Delaware Trustee shall be one of the trustees of the Asbestos Trust for the sole and limited purpose of fulfilling the requirements of Section 3807 of the Act and for taking such actions as are required to be taken by a Delaware Trustee under the Act. The duties (including fiduciary duties), liabilities and obligations of the Delaware Trustee shall be limited to (i) accepting legal process served on the Asbestos Trust in the State of Delaware and (ii) the execution of any certificates required to be filed with the Secretary of State of the State of Delaware that the Delaware Trustee is required to execute under Section 3811 of the Act (acting solely at the written direction of the Trustee) and there shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the Delaware Trustee. To the extent that, at law or in equity, the Delaware Trustee has duties (including fiduciary duties) and liabilities relating thereto to the Asbestos Trust, the other parties hereto or any beneficiary of the Asbestos Trust, it is hereby understood and agreed by the other parties hereto that such duties and liabilities are replaced by the duties and liabilities of the Delaware Trustee expressly set forth in this Trust Agreement.

(c) The Delaware Trustee shall serve until such time as the Trustee removes the Delaware Trustee or the Delaware Trustee resigns and a successor Delaware Trustee is appointed by the Trustee in accordance with the terms of Section 4.11(d) below. The Delaware Trustee may resign at any time upon the giving of at least sixty (60) days' advance written notice to the Trustee; provided, that such resignation shall not become effective unless and until a successor Delaware Trustee shall have been appointed by the Trustee in accordance with Section 4.11(d) below. If the Trustee does not act within such 60-day period, the Delaware Trustee may apply to the Court of Chancery of the State of Delaware for the appointment of a successor Delaware Trustee.

(d) Upon the resignation or removal of the Delaware Trustee, the Trustee shall appoint a successor Delaware Trustee by delivering a written instrument to the outgoing Delaware Trustee. Any successor Delaware Trustee must satisfy the requirements of Section 3807 of the Act. Any resignation or removal of the Delaware Trustee and appointment of a successor Delaware Trustee shall not become effective until a written acceptance of appointment is delivered by the successor Delaware Trustee to the outgoing Delaware Trustee and the Trustee and any fees and expenses due to the outgoing Delaware Trustee are paid. Following compliance with the preceding sentence, the successor Delaware Trustee shall become fully vested with all of the rights, powers, duties and obligations of the outgoing Delaware Trustee under this Trust Agreement, with like effect as if originally named as Delaware Trustee, and the outgoing Delaware Trustee shall be discharged of its duties and obligations under this Trust Agreement.

**4.12 Medicare Reporting Obligations**.

(a) The Asbestos Trust shall register as a Responsible Reporting Entity ("**RRE**") under the reporting provisions of Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (Pub. L. 110-173) ("**MMSEA**").

(b) The Asbestos Trust shall, at its sole expense, timely submit all reports that are required under MMSEA on account of any claims settled, resolved, paid, or otherwise liquidated by the Asbestos Trust or with respect to contributions to the Asbestos Trust. The Asbestos Trust, in its role as RRE, shall follow all applicable guidance published by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services and/or any other agent or successor entity charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA (collectively, "**CMS**") to determine whether or not, and, if so, how, to report to CMS pursuant to MMSEA.

(c) The Trustee shall obtain prior to remittance of funds to claimants' counsel or to the claimant, if pro se, in respect of any Asbestos Claim a certification from the claimant to be paid that said claimant has or will provide for the payment and/or resolution of any obligations owing or potentially owing under 42 U.S.C. § 1395y(b), or any related rules, regulations, or guidance, in connection with, or relating to, such Asbestos Claim.

## SECTION V

## TRUST ADVISORY COMMITTEE

**5.1** **Members.** The TAC shall consist of five (5) members, who shall initially be the persons named on the signature page hereof.

**5.2** **Duties.** The members of the TAC shall serve in a fiduciary capacity representing all holders of present Asbestos Claims. The TAC shall have no fiduciary obligations or duties to any party other than the holders of present Asbestos Claims. The Trustee must consult with the TAC on matters identified in Section 2.2(e) above and in other provisions herein, and must obtain the consent of the TAC on matters identified in Section 2.2(f) above. Where provided in the TDP, certain other actions by the Trustee are also subject to the consent of the TAC. Except for the duties and obligations expressed in this Trust Agreement and the documents referenced herein (including the TDP), there shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the TAC. To the extent that, at law or in equity, the TAC has duties (including fiduciary duties) and liabilities relating thereto to the Asbestos Trust, the other parties hereto or any beneficiary of the Asbestos Trust, it is hereby understood and agreed by the other parties hereto that such duties and liabilities are replaced by

the duties and liabilities of the TAC expressly set forth in this Trust Agreement and the documents referenced herein (including the TDP).

**5.3 Term of Office.**

(a) The initial members of the TAC appointed in accordance with Section 5.1 above shall serve the staggered three-, four-, or five-year terms shown on the signature pages hereof. Thereafter, each term of office shall be five (5) years. Each member of the TAC shall serve until the earlier of (i) his or her death, (ii) his or her resignation pursuant to Section 5.3(b) below, (iii) his or her removal pursuant to Section 5.3(c) below, (iv) the end of his or her term as provided above, or (v) the termination of the Asbestos Trust pursuant to Section 7.2 below.

(b) A member of the TAC may resign at any time by written notice to the other members of the TAC, the Trustee and the FCR. Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c) A member of the TAC may be removed in the event that he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or a consistent pattern of neglect and failure to perform or to participate in performing the duties of such member hereunder, such as repeated non-attendance at scheduled meetings, or for other good cause. Such removal shall be made at the recommendation of the remaining members of the TAC with the approval of the Bankruptcy Court.

**5.4 Appointment of Successor.**

(a) If, prior to the termination of service of a member of the TAC other than as a result of removal, he or she has designated in writing an individual to succeed him or her as a member of the TAC, such individual shall be his or her successor. If such member of the TAC

did not designate an individual to succeed him or her prior to the termination of his or her service as contemplated above, such member's law firm may designate his or her successor. If (i) a member of the TAC did not designate an individual to succeed him or her prior to the termination of his or her service and such member's law firm does not designate his or her successor as contemplated above or (ii) he or she is removed pursuant to Section 5.3(c) above, his or her successor shall be appointed by a majority of the remaining members of the TAC or, if such members cannot agree on a successor, the Bankruptcy Court. Nothing in this Trust Agreement shall prevent the reappointment of an individual serving as a member of the TAC for an additional term or terms, and there shall be no limit on the number of terms that a TAC member may serve.

(b) Each successor TAC member shall serve until the earlier of (i) the end of the full term of five (5) years for which he or she was appointed if his or her immediate predecessor member of the TAC completed his or her term, (ii) the end of the term of the member of the TAC whom he or she replaced if his or her predecessor member did not complete such term, (iii) his or her death, (iv) his or her resignation pursuant to Section 5.3(b) above, (v) his or her removal pursuant to Section 5.3(c) above, or (vi) the termination of the Asbestos Trust pursuant to Section 7.2 below.

(c) No successor TAC member shall be liable personally for any act or omission of his or her predecessor TAC member. No successor TAC member shall have any duty to investigate the acts or omissions of his or her predecessor TAC member. No TAC member shall be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

**5.5 <u>TAC's Employment of Professionals</u>.**

(a) The TAC may but is not required to retain and/or consult counsel, accountants, appraisers, auditors, forecasters, experts, and financial and investment advisors, and such other parties deemed by the TAC to be qualified as experts on matters submitted to the TAC (the "**TAC Professionals**"). The TAC and the TAC Professionals shall at all times have complete access to the Asbestos Trust's officers, employees and agents, as well as to the Trust Professionals, and shall also have complete access to all information generated by them or otherwise available to the Asbestos Trust or the Trustee provided that any information provided by the Trust Professionals shall not constitute a waiver of any applicable privilege. In the absence of gross negligence, the written opinion of or information provided by any TAC Professional or Trust Professional deemed by the TAC to be qualified as an expert on the particular matter submitted to the TAC shall be full and complete authorization and protection in support of any action taken or not taken by the TAC in good faith and in accordance with the written opinion of or information provided by the TAC Professional or Trust Professional.

(b) The Asbestos Trust shall promptly reimburse, or pay directly if so instructed, the TAC for all reasonable fees and costs associated with the TAC's employment of legal counsel pursuant to this provision in connection with the TAC's performance of its duties hereunder. The Asbestos Trust shall also promptly reimburse, or pay directly if so instructed, the TAC for all reasonable fees and costs associated with the TAC's employment of any other TAC Professional pursuant to this provision in connection with the TAC's performance of its duties hereunder; *provided, however*, that (i) the TAC has first submitted to the Asbestos Trust a written request for such reimbursement setting forth (A) the reasons why the TAC desires to employ such TAC Professional, and (B) the basis upon which the TAC seeks advice independent of the Trust Professionals to meet the need of the TAC for such expertise or advice, and (ii) the

Asbestos Trust has approved the TAC's request for reimbursement in writing, which approval must not be unreasonably withheld, delayed, or denied. If the Asbestos Trust agrees to pay for the TAC Professional, such reimbursement shall be treated as an Asbestos Trust expense. If the Asbestos Trust declines to pay for the TAC Professional, it must set forth its reasons in writing. If the TAC still desires to employ the TAC Professional at the Asbestos Trust's expense, the TAC and/or the Trustee shall resolve their dispute pursuant to Section 7.13 below.

**5.6 Compensation and Expenses of the TAC.** The members of the TAC shall not receive compensation from the Asbestos Trust for their services as TAC members. However, the members of the TAC shall be reimbursed promptly for all reasonable out-of-pocket costs and expenses incurred in connection with the performance of their duties hereunder. Such reimbursement shall be deemed an Asbestos Trust expense. The Asbestos Trust shall include a description of the amounts paid under this Section 5.6 in the Annual Report to be filed with the Bankruptcy Court and provided to the FCR and the TAC pursuant to Section 2.2(c)(i).

**5.7 Procedures for Consultation With and Obtaining the Consent of the TAC.**

(a) Consultation Process.

(i) In the event the Trustee is required to consult with the TAC pursuant to Section 2.2(e) above or on other matters as provided herein, the Trustee shall provide the TAC with written advance notice of the matter under consideration, and with all relevant information concerning the matter as is reasonably practicable under the circumstances. The Trustee shall also provide the TAC with such reasonable access to the Trust Professionals and other experts retained by the Asbestos Trust and its staff (if any) as the TAC may reasonably request during the time that the Trustee is considering such matter, and shall also

provide the TAC the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such matter with the Trustee.

(ii) In determining when to take definitive action on any matter subject to the consultation procedures set forth in this Section 5.7(a), the Trustee shall take into consideration the time required for the TAC, if its members so wish, to engage and consult with its own independent financial or investment advisors as to such matter. In any event, the Trustee shall not take definitive action on any such matter until at least thirty (30) days after providing the TAC with the initial written notice that such matter is under consideration by the Trustee, unless such time period is waived by the TAC.

(b) Consent Process.

(i) In the event the Trustee is required to obtain the consent of the TAC pursuant to Section 2.2(f) above, the Trustee shall provide the TAC with a written notice stating that their consent is being sought pursuant to that provision, describing in detail the nature and scope of the action the Trustee proposes to take, and explaining in detail the reasons why the Trustee desires to take such action. The Trustee shall provide the TAC as much relevant additional information concerning the proposed action as is reasonably practicable under the circumstances. The Trustee shall also provide the TAC with such reasonable access to the Trust Professionals and other experts retained by the Asbestos Trust and its staff (if any) as the TAC may reasonably request during the time that the Trustee is considering such action, and shall also provide the TAC the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such action with the Trustee.

(ii) The TAC must consider in good faith and in a timely fashion any request for its consent by the Trustee, and must in any event advise the Trustee in writing of its

consent or its objection to the proposed action within thirty (30) days of receiving the original request for consent from the Trustee, or within such additional time as the Trustee and the TAC may agree. The TAC may not withhold its consent unreasonably. If the TAC decides to withhold its consent, it must explain in detail its objections to the proposed action. If the TAC does not advise the Trustee in writing of its consent or its objections to the action within thirty (30) days of receiving notice regarding such request (or the additional time period agreed to by the Trustee and the TAC), the TAC's consent to the proposed actions shall be deemed to have been affirmatively granted.

(iii) If, after following the procedures specified in this Section 5.7(b), the TAC continues to object to the proposed action and to withhold its consent to the proposed action, the Trustee and/or the TAC shall resolve their dispute pursuant to Section 7.13. However, the burden of proof with respect to the validity of the TAC's objection and withholding of its consent shall be on the TAC.

## SECTION VI

## THE FCR

**6.1 Duties.** The initial FCR shall be the individual identified on the signature pages hereto. He or she shall serve in a fiduciary capacity, representing the interests of the holders of future Asbestos Claims for the purpose of protecting the rights of such persons. The FCR shall have no fiduciary obligations or duties to any party other than holders of future Asbestos Claims. The Trustee must consult with the FCR on matters identified in Section 2.2(e) above and on certain other matters provided herein, and must obtain the consent of the FCR on matters identified in Section 2.2(f) above. Where provided in the TDP, certain other actions by the Trustee are also subject to the consent of the FCR. Except for the duties and obligations

expressed in this Trust Agreement and the documents referenced herein (including the TDP), there shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the FCR. To the extent that, at law or in equity, the FCR has duties (including fiduciary duties) and liabilities relating thereto to the Asbestos Trust, the other parties hereto or any beneficiary of the Asbestos Trust, it is hereby understood and agreed by the other parties hereto that such duties and liabilities are replaced by the duties and liabilities of the FCR expressly set forth in this Trust Agreement and the documents referenced herein (including the TDP).

**6.2 Term of Office.**

(a) The FCR shall serve until the earlier of (i) his or her death, (ii) his or her resignation pursuant to Section 6.2(b) below, (iii) his or her removal pursuant to Section 6.2(c) below, or (iv) the termination of the Asbestos Trust pursuant to Section 7.2 below.

(b) The FCR may resign at any time by written notice to the Trustee. Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c) The FCR may be removed by the Bankruptcy Court in the event he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or a consistent pattern of neglect and failure to perform or to participate in performing the duties hereunder, such as repeated non-attendance at scheduled meetings, or for other good cause.

(d) No successor FCR shall be liable personally for any act or omission of his or her predecessor. No successor FCR shall have any duty to investigate the acts or omissions of

his or her predecessor. No FCR shall be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

**6.3** **Appointment of Successor.** A vacancy caused by resignation or death shall be filled with an individual nominated prior to the effective date of the resignation or the death by the resigning or deceased FCR, and a vacancy caused by removal of the FCR shall be filled with an individual selected by the Trustee in consultation with the TAC. In the event a nominee has not been pre-selected, the successor shall be chosen by the Trustee in consultation with the TAC.

**6.4** **FCR's Employment of Professionals.**

(a) The FCR may, but is not required to, retain and/or consult counsel, accountants, appraisers, auditors, forecasters, experts, and financial and investment advisors, and such other parties deemed by the FCR to be qualified as experts on matters submitted to the FCR (the "**FCR Professionals**"). The FCR and the FCR Professionals shall at all times have complete access to the Asbestos Trust's officers, employees and agents, as well as to the Trust Professionals, and shall also have complete access to all information generated by them or otherwise available to the Asbestos Trust or the Trustee provided that any information provided by the Trust Professionals shall not constitute a waiver of any applicable privilege. In the absence of gross negligence, the written opinion of or information provided by any FCR Professional or Trust Professional deemed by the FCR to be qualified as an expert on the particular matter submitted to the FCR shall be full and complete authorization and protection in support of any action taken, or not taken, by the FCR in good faith and in accordance with the written opinion of or information provided by the FCR Professional or Trust Professional.

(b) The Asbestos Trust shall promptly reimburse, or pay directly if so instructed, the FCR for all reasonable fees and costs associated with the FCR's employment of

legal counsel pursuant to this provision in connection with the FCR's performance of his or her duties hereunder. The Asbestos Trust shall also promptly reimburse, or pay directly if so instructed, the FCR for all reasonable fees and costs associated with the FCR's employment of any other FCR Professionals pursuant to this provision in connection with the FCR's performance of his or her duties hereunder; *provided, however*, that (i) the FCR has first submitted to the Asbestos Trust a written request for such reimbursement setting forth (A) the reasons why the FCR desires to employ the FCR Professional, and (B) the basis upon which the FCR seeks advice independent of the Trust Professionals to meet the need of the FCR for such expertise or advice, and (ii) the Asbestos Trust has approved the FCR's request for reimbursement in writing, which approval must not be unreasonably withheld, delayed, or denied. If the Asbestos Trust agrees to pay for the FCR Professional, such reimbursement shall be treated as an Asbestos Trust expense. If the Asbestos Trust declines to pay for the FCR Professional, it must set forth its reasons in writing. If the FCR still desires to employ the FCR Professional at the Asbestos Trust's expense, the FCR and/or the Trustee shall resolve their dispute pursuant to Section 7.13 below.

**6.5** **<u>Compensation and Expenses of the FCR</u>.** The FCR shall receive compensation from the Asbestos Trust in the form of payment at the FCR's normal hourly rate for services performed. The Asbestos Trust will promptly reimburse the FCR for all reasonable out-of-pocket costs and expenses incurred by the FCR in connection with the performance of his or her duties hereunder. Such reimbursement or direct payment shall be deemed an Asbestos Trust expense. The Asbestos Trust shall include a description of the amounts paid under this Section 6.5 in the Annual Report to be filed with the Bankruptcy Court and provided to the FCR and the TAC pursuant to Section 2.2(c)(i).

**6.6 Procedures for Consultation with and Obtaining the Consent of the FCR.**

(a) Consultation Process.

(i) In the event the Trustee is required to consult with the FCR pursuant to Section 2.2(e) above or on any other matters specified herein, the Trustee shall provide the FCR with written advance notice of the matter under consideration, and with all relevant information concerning the matter as is reasonably practicable under the circumstances. The Trustee shall also provide the FCR with such reasonable access to the Trust Professionals and other experts retained by the Asbestos Trust and its staff (if any) as the FCR may reasonably request during the time that the Trustee is considering such matter, and shall also provide the FCR the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such matter with the Trustee.

(ii) In determining when to take definitive action on any matter subject to the consultation process set forth in this Section 6.6(a), the Trustee shall take into consideration the time required for the FCR, if he or she so wishes, to engage and consult with his or her own independent financial or investment advisors as to such matter. In any event, the Trustee shall not take definitive action on any such matter until at least thirty (30) days after providing the FCR with the initial written notice that such matter is under consideration by the Trustee, unless such period is waived by the FCR.

(b) Consent Process.

(i) In the event the Trustee is required to obtain the consent of the FCR pursuant to Section 2.2(f) above, the Trustee shall provide the FCR with a written notice stating that his or her consent is being sought pursuant to that provision, describing in detail the nature and scope of the action the Trustee proposes to take, and explaining in detail the reasons

why the Trustee desires to take such action. The Trustee shall provide the FCR as much relevant additional information concerning the proposed action as is reasonably practicable under the circumstances. The Trustee shall also provide the FCR with such reasonable access to the Trust Professionals and other experts retained by the Asbestos Trust and its staff (if any) as the FCR may reasonably request during the time that the Trustee is considering such action, and shall also provide the FCR the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such action with the Trustee.

(ii) The FCR must consider in good faith and in a timely fashion any request for his or her consent by the Trustee, and must in any event advise the Trustee in writing of his or her consent or objection to the proposed action within thirty (30) days of receiving the original request for consent from the Trustee, or within such additional time as the Trustee and FCR may agree. The FCR may not withhold his or her consent unreasonably. If the FCR decides to withhold consent, he or she must explain in detail his or her objections to the proposed action. If the FCR does not advise the Trustee in writing of his or her consent or objections to the proposed action within thirty (30) days of receiving the notice from the Trustee regarding such consent (or the additional time period agreed to by the Trustee and the FCR), the FCR's consent shall be deemed to have been affirmatively granted.

(iii) If, after following the procedures specified in this Section 6.6(b), the FCR continues to object to the proposed action and to withhold its consent to the proposed action, the Trustee and/or the FCR shall resolve their dispute pursuant to Section 7.13. However, the burden of proof with respect to the validity of the FCR's objection and withholding of his or her consent shall be on the FCR.

## SECTION VII

## GENERAL PROVISIONS

**7.1 Irrevocability.** To the fullest extent permitted by applicable law, the Asbestos Trust is irrevocable.

**7.2 Term; Termination.**

(a) The term for which the Asbestos Trust is to exist shall commence on the date of the filing of the Certificate of Trust and shall terminate pursuant to the provisions of Section 7.2 (b) – (d) below.

(b) The Asbestos Trust shall automatically dissolve on the date (the "**Dissolution Date**") ninety (90) days after the first to occur of the following events:

(i) the date on which the Trustee decides to dissolve the Asbestos Trust because (A) he or she deems it unlikely that new Asbestos Claims will be filed against the Asbestos Trust, (B) all Asbestos Claims duly filed with the Asbestos Trust have been liquidated and paid to the extent provided in this Trust Agreement and the TDP or have been disallowed by a final non-appealable order, to the extent possible based upon the funds available through the Plan, and (C) twelve (12) consecutive months have elapsed during which no new Asbestos Claim has been filed with the Asbestos Trust; or

(ii) if the Trustee has procured and has in place irrevocable insurance policies and has established claims handling agreements and other necessary arrangements with suitable third parties adequate to discharge all expected remaining obligations and expenses of the Asbestos Trust in a manner consistent with this Trust Agreement and the TDP, the date on which the Bankruptcy Court enters an order approving such insurance and other arrangements and such order becomes a final order; or

(iii) to the extent that any rule against perpetuities shall be deemed applicable to the Asbestos Trust, the date on which twenty-one (21) years less ninety-one (91) days pass after the death of the last survivor of all of the descendants of the late President Franklin D. Roosevelt living on the date hereof.

(c) On the Dissolution Date or as soon as reasonably practicable, after the wind-up of the Asbestos Trust's affairs by the Trustee and payment of all the Asbestos Trust's liabilities have been provided for as required by applicable law including Section 3808 of the Act, all monies remaining in the Asbestos Trust estate shall be given to such organization(s) exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code, which tax-exempt organization(s) shall be selected by the Trustee using his or her reasonable discretion; *provided, however*, that (i) if practicable, the activities of the selected tax-exempt organization(s) shall be related to the treatment of, research on, or the relief of suffering of individuals suffering from asbestos-related disorders, and (ii) the tax-exempt organization(s) shall not bear any relationship to the Reorganized Debtor within the meaning of section 468B(d)(3) of the Internal Revenue Code. Notwithstanding any contrary provision of the Plan and related documents, this Section 7.2(c) cannot be modified or amended.

(d) Following the dissolution and distribution of the assets of the Asbestos Trust, the Asbestos Trust shall terminate and the Trustee and the Delaware Trustee (acting solely at the written direction of the Trustee) shall execute and cause a Certificate of Cancellation of the Certificate of Trust of the Asbestos Trust to be filed in accordance with the Act. Notwithstanding anything to the contrary contained in this Trust Agreement, the existence of the

Asbestos Trust as a separate legal entity shall continue until the filing of such Certificate of Cancellation.

**7.3** **Amendments.** The Trustee, after consultation with the TAC and the FCR, and subject to the unanimous consent of the TAC and the FCR, may modify or amend this Trust Agreement. The Trustee, after consultation with the TAC and the FCR, and subject to the consent of the TAC and the FCR, may modify or amend the TDP; *provided, however*, that no amendment to the TDP shall be inconsistent with the provisions limiting amendments to that document provided therein, and in particular the provisions limiting amendment of the Payment Percentage set forth in Section 4.2 of the TDP. Any modification or amendment made pursuant to this Section must be done in writing. Notwithstanding anything contained in this Trust Agreement or the TDP to the contrary, neither this Trust Agreement, the TDP, nor any document annexed to the foregoing shall be modified or amended in any way that could jeopardize, impair, or modify (i) the applicability of section 524(g) of the Bankruptcy Code to the Plan and the Confirmation Order, (ii) the efficacy or enforceability of the Injunctions or any other injunction or release issued or granted in connection with the Plan, or (iii) the Asbestos Trust's qualified settlement fund status under the QSF Regulations. Any amendment affecting the rights, duties, immunities or liabilities of the Delaware Trustee shall require the Delaware Trustee's written consent. The Trustee shall provide the U.S. Trustee with notice within ten (10) days of any modifications or amendments to this Trust Agreement or the TDP.

**7.4** **Meetings.** The Delaware Trustee shall not be required nor permitted to attend meetings relating to the Asbestos Trust.

**7.5** **Severability.** Should any provision in this Trust Agreement be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Trust Agreement.

**7.6** **Notices.** Notices to persons asserting claims shall be given by first class mail, postage prepaid, at the address of such person, or, where applicable, such person's legal representative, in each case as provided on such person's claim form submitted to the Asbestos Trust with respect to his or her Asbestos Claim.

(a) Any notices or other communications required or permitted hereunder to the following parties and the U.S. Trustee shall be in writing and delivered at the addresses designated below, or sent by e-mail or facsimile pursuant to the instructions listed below, or mailed by registered or certified mail, return receipt requested, postage prepaid, addressed as follows, or to such other address or addresses as may hereafter be furnished in writing to each of the other parties and the U.S. Trustee listed below in compliance with the terms hereof.

To the Asbestos Trust through the Trustee:

Duro Dyne Asbestos Personal Injury Trust
c/o Law Office of Alan B. Rich
Attn: Alan B. Rich, Esq.
7324 Gaston Avenue
Suite 124, LB 430
Dallas, Texas 75214
Phone: (214) 744-5100
Fax: (214) 744-5101
durodyne@alanrichlaw.com

With a copy to:

[_____]

To the Delaware Trustee:

Wilmington Trust, National Association
1100 N. Market Street

Wilmington, DE 19890-1625
Attn: Corporate Trust Administration
Email: dyoung@wilmingtontrust.com
Phone: (302) 636-5216
Fax: (302) 636-4149

To the TAC:

Joseph W. Belluck, Esq.
Belluck & Fox, LLP
546 5th Avenue, 4th Floor
New York, NY 10036
Email: jbelluck@belluckfox.com

Alan R. Brayton, Esq.
Brayton & Purcell LLP
222 Rush Landing Road
Novato, CA 94945
Email: abrayton@braytonlaw.com

Perry J. Browder, Esq.
Simmons Hanly Conroy
One Court Street
Alton, IL 62002
Email: pbrowder@simmonsfirm.com

Kathy Byrne, Esq.
Cooney & Conway
120 N. LaSalle Street, Suite 3000
Chicago, IL 60602
Email: kbyrne@cooneyconway.com

James L. Ferraro, Esq.
Kelley & Ferraro, LLP
Ernst & Young Tower – 950 Main Avenue
Cleveland, OH 44113
Email: jlf@ferrarolaw.com

To the FCR:

Lawrence Fitzpatrick
100 American Metro Blvd., Suite 108
Hamilton, NJ 08619
Email: lfitzpatrick@theccr.com
Phone: (609) 219-8862

With a copy to:

Edwin J. Harron, Esq.
Young Conaway Stargatt & Taylor, LLP
1000 North King Street
Wilmington, DE 19801
Email: eharron@ycst.com
Phone: (302) 571-6703

To the Reorganized Debtor:

[_____]

With a copy to:

[_____]

To the U.S. Trustee:

Office of the U.S. Trustee
One Newark Center, Suite 2100
Newark, New Jersey 07102
Attn: Jeffrey Sponder, Esq.
Email: jeffrey.m.sponder@usdoj.gov
Phone: (973) 645-2379
Fax: (973) 645-5993

(b) All such notices and communications if mailed shall be effective when physically delivered at the designated addresses or, if electronically transmitted, when the communication is received at the designated addresses and confirmed by the recipient by return transmission.

**7.7 <u>Successors and Assigns</u>.** The provisions of this Trust Agreement shall be binding upon and inure to the benefit of the Debtors, the Asbestos Trust, the Trustee, and the Reorganized Debtor, and their respective successors and assigns, except that neither the Debtors, the Asbestos Trust, the Trustee, nor the Reorganized Debtor may assign or otherwise transfer any of its, or their, rights or obligations, if any, under this Trust Agreement except, in the case of the Asbestos Trust and the Trustee, as contemplated by Section 2.1 above.

**7.8 Limitation on Claim Interests for Securities Laws Purposes.** Asbestos Claims, and any interests therein (a) shall not be assigned, conveyed, hypothecated, pledged, or otherwise transferred, voluntarily or involuntarily, directly or indirectly, except by will or under the laws of descent and distribution; (b) shall not be evidenced by a certificate or other instrument; (c) shall not possess any voting rights; and (d) shall not be entitled to receive any dividends or interest; provided, however, that clause (a) of this Section 7.8 shall not apply to the holder of a claim that is subrogated to an Asbestos Claim as a result of its satisfaction of such Asbestos Claim.

**7.9 Entire Agreement; No Waiver.** The entire agreement of the parties relating to the subject matter of this Trust Agreement is contained herein and in the documents referred to herein, and this Trust Agreement and such documents supersede any prior oral or written agreements concerning the subject matter hereof. No failure to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof or of any other right, power or privilege. The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.

**7.10 Headings.** The headings used in this Trust Agreement are inserted for convenience only and do not constitute a portion of this Trust Agreement, nor in any manner affect the construction of the provisions of this Trust Agreement.

**7.11 Governing Law.** The validity and construction of this Trust Agreement and all amendments hereto and thereto shall be governed by laws of the State of Delaware, and the rights of all parties hereto and the effect of every provision hereof shall be subject to and construed according to the laws of the State of Delaware without regard to the conflicts of law provisions thereof that would purport to apply the law of any other jurisdiction; provided,

however, that the parties hereto intend that the provisions hereof shall control and there shall not be applicable to the Asbestos Trust, the Trustee, the Delaware Trustee, the TAC, the FCR, or this Trust Agreement, any provision of the laws (statutory or common) of the State of Delaware pertaining to trusts that relate to or regulate in a manner inconsistent with the terms hereof: (a) the filing with any court or governmental body or agency of trustee accounts or schedules of trustee fees and charges; (b) affirmative requirements to post bonds for trustees, officers, agents, or employees of a trust; (c) the necessity for obtaining court or other governmental approval concerning the acquisition, holding or disposition of real or personal property; (d) fees or other sums payable to trustees, officers, agents or employees of a trust; (e) the allocation of receipts and expenditures to income or principal; (f) restrictions or limitations on the permissible nature, amount or concentration of trust investments or requirements relating to the titling, storage or other manner of holding of trust assets; (g) the existence of rights or interests (beneficial or otherwise) in trust assets; (h) the ability of beneficial owners or other persons to terminate or dissolve a trust; or (i) the establishment of fiduciary or other standards or responsibilities or limitations on the acts or powers of trustees or beneficial owners that are inconsistent with the limitations on liability or authorities and powers of the Trustee, the Delaware Trustee, the TAC, or the FCR set forth or referenced in this Trust Agreement. Section 3540 of the Act shall not apply to the Asbestos Trust.

**7.12 Settlors' Representative and Cooperation.** The Debtors are hereby irrevocably designated as the Settlors, and they are hereby authorized to take any action required of the Settlors by the Trustee in connection with the Trust Agreement. The Reorganized Debtor agrees to cooperate in implementing the goals and objectives of this Trust Agreement.

**7.13 Dispute Resolution.** Any disputes that arise under this Trust Agreement or under the TDP among the parties hereto shall be resolved by submission of the matter to an alternative dispute resolution ("**ADR**") process mutually agreeable to the parties involved. Should any party to the ADR process be dissatisfied with the decision of the arbitrator(s), that party may apply to the Bankruptcy Court for a judicial determination of the matter. Any review conducted by the Bankruptcy Court shall be *de novo*. In any case, if the dispute arose pursuant to the consent provision set forth in Section 5.7(b) (in the case of the TAC) or Section 6.6(b) (in the case of the FCR), the burden of proof shall be on the party or parties who withheld consent to show that the objection was valid. Should the dispute not be resolved by the ADR process within thirty (30) days after submission, the parties are relieved of the requirement to pursue ADR prior to application to the Bankruptcy Court. If the Trustee determines that the matter in dispute is exigent and cannot await the completion of the ADR process, the Trustee shall have the discretion to elect out of the ADR process altogether or at any stage of the process and seek resolution of the dispute in the Bankruptcy Court. For the avoidance of doubt, any issue or dispute raised by the U.S. Trustee arising under this Trust Agreement or the TDP may be brought directly before the Bankruptcy Court without compliance with the dispute resolution procedures set forth in this Section 7.13.

**7.14 Enforcement and Administration.** The provisions of this Trust Agreement and the TDP attached hereto shall be enforced by the Bankruptcy Court pursuant to the Plan. The parties hereby further acknowledge and agree that the Bankruptcy Court shall have exclusive jurisdiction over the settlement of the accounts of the Trustee and over any disputes hereunder not resolved by alternative dispute resolution in accordance with Section 7.13 above.

**7.15** **Effectiveness.** This Trust Agreement shall not become effective until it has been executed and delivered by all the parties hereto.

**7.16** **Counterpart Signatures.** This Trust Agreement may be executed in any number of counterparts and by different Parties on separate counterparts (including by facsimile or portable document format (pdf)), and each such counterpart shall be deemed to be an original, but all such counterparts shall together constitute one and the same instrument.

IN WITNESS WHEREOF, the parties have executed this Trust Agreement this

_______day of_______, 2019.

**SETTLORS:**

**DURO DYNE NATIONAL CORP.**
**DURO DYNE CORPORATION**
**DURO DYNE WEST CORP.**
**DURO DYNE MIDWEST CORP.**
**DURO DYNE MACHINERY CORP.**

By:___________________________________

Title: In the capacity listed on Schedule I hereto with respect to each entity listed above

**ASBESTOS CLAIMANTS COMMITTEE**

By:________________________________________

**TRUSTEE**

_____________________________________
Name: Alan B. Rich

**DELAWARE TRUSTEE**

WILMINGTON TRUST, NATIONAL ASSOCIATION

By:________________________________________
Name:

Title:

**TRUST ADVISORY COMMITTEE**

______________________________________
Name: Joseph W. Belluck
Expiration Date of Initial Term: [_____] Anniversary of the date of this Trust Agreement

______________________________________
Name: Alan R. Brayton
Expiration Date of Initial Term: [_____] Anniversary of the date of this Trust Agreement

______________________________________
Name: Perry J. Browder
Expiration Date of Initial Term: [_____] Anniversary of the date of this Trust Agreement

______________________________________
Name: Kathy Byrne
Expiration Date of Initial Term: [_____] Anniversary of the date of this Trust Agreement

______________________________________
Name: James L. Ferraro
Expiration Date of Initial Term: [_____] Anniversary of the date of this Trust Agreement

**FCR**

______________________________________
Name: Lawrence Fitzpatrick